# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LASPATA DECARO STUDIO CORPORATION, ) <br> ) <br>     Plaintiff/Counter-Defendant, ) <br> ) <br>     v. ) <br> ) <br> RIMOWA GMBH, RIMOWA DISTRIBUTION ) <br> INC., and RIMOWA INC., ) <br> ) <br>     Defendants/Counter-Plaintiffs/ ) <br>     Third-Party Plaintiffs, ) <br> ) <br>     v. ) <br> ) <br> MEIRÉ GMBH & CO. KG ) <br> d/b/a MEIRÉ AND MEIRÉ, ) <br> ) <br>     Third-Party Defendant. ) | Civil Action No. 16-cv-0934 (LGS) |

## THIRD-PARTY DEFENDANT MEIRÉ GMBH & CO. KG d/b/a MEIRÉ AND MEIRÉ'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

Lisa Pearson (LP4916)
**KILPATRICK TOWNSEND & STOCKTON LLP**
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 775-8700
Facsimile: (212) 775-8800
Email: lpearson@kilpatricktownsend.com

Sabina A. Vayner (*admitted pro hac vice*)
**KILPATRICK TOWNSEND & STOCKTON LLP**
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4528
Telephone: (404) 815-6500
Facsimile: (404) 815-6555
Email: svayner@kilpatricktownsend.com

*Attorneys for Third-Party Defendant*
*Meiré GmbH & Co. KG d/b/a Meiré and Meiré*

**TABLE OF CONTENTS**

ARGUMENT ...................................................................................................................................1

I.    THE THIRD AND FOURTH TPC CLAIMS ARE EITHER CONTRACT-BASED OR FAIL TO STATE A CLAIM..................................................1

II.    THE TPC CLAIMS DO NOT ARISE UNDER U.S. COPYRIGHT LAW ........................1

III.    THE TPC SHOULD BE DISMISSED UNDER THE DOCTRINE OF FORUM NON CONVENIENS ...............................................................................................3

    A.    The Parties' Actions Confirm That the Forum Selection Clause of the Agreement Was Reasonably Communicated to Rimowa .................................3

    B.    By Its Terms, the Forum Selection Clause is Mandatory ........................................7

IV.    THIS COURT LACKS PERSONAL JURISDICTION OVER MEIRÉ.............................8

    A.    The Claims Do Not Arise from Meiré's Business Transactions in New York..................................................................................................................8

    B.    Meiré Did Not Cause Tortious Injury to Rimowa In New York .............................9

V.    RIMOWA DISTRIBUTION INC. AND RIMOWA INC. HAVE NOT ESTABLISHED STANDING TO SUE ...........................................................................10

CONCLUSION..............................................................................................................................10

# **TABLE OF AUTHORITIES**

**Cases**

*Apotex Corp. v. Istituto Biologico Chemioterapico S.p.A.*,
  No. 02 C 5345, 2003 WL 21780965 (N.D. Ill. July 30, 2003) ................................................. 8

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*,
  134 S.Ct. 568 (2013) .............................................................................................................. 3

*AWLI Grp., Inc. v. Amber Freight Shipping Lines*,
  828 F. Supp. 2d 557 (E.D.N.Y. 2011) .................................................................................. 10

*Baosteel Am., Inc. v. M/V "Ocean Lord,"*
  257 F. Supp. 2d 687 (S.D.N.Y. 2003) .................................................................................... 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................................................. 10

*Firma Melodiya v. ZYX Music GmbH*,
  882 F. Supp. 1306 (S.D.N.Y. 1995) ....................................................................................... 2

*Frietsch v. Refco, Inc.*,
  56 F.3d 825 (7th Cir. 1995) .................................................................................................... 7

*Giordano v. UBS, AG*,
  134 F. Supp. 3d 697 (S.D.N.Y. 2015) .................................................................................... 3

*Glencore Ltd. v. Degussa Engineered Carbons L.P.*,
  848 F. Supp. 2d 410 (S.D.N.Y. 2012) .................................................................................... 6

*Greenlight Capital, Inc. v. GreenLight (Switzerland) S.A.*,
  No. 04 CIV. 3136(HB), 2005 WL 13682 (S.D.N.Y. Jan. 3, 2005) ......................................... 2

*Hagrpota for Trading & Distr., Ltd. v. Oakley Fertilizer Inc.*,
  No. 09 Civ. 9779(CM)(KNF), 2010 WL 2594286 (S.D.N.Y. June 18, 2010) ........................ 6

*Halo Creative & Design Ltd. v. Comptoir des Indes Inc.*,
  816 F.3d 1366 (Fed. Cir. 2016) .............................................................................................. 2

*Hill v. HSBC Bank PLC*,
  No. 14CV09745-LTS, 2016 WL 4926199 (S.D.N.Y. Sept. 15, 2016) ................................... 9

*Horvath v. Banco Comercial Portugues, S.A.*,
  461 F. App'x 61 (2d Cir. 2012) .............................................................................................. 6

*Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG*,
  160 F. Supp. 2d 722 (S.D.N.Y. 2001) .................................................................................... 9

*Lowry & Co. v. S.S. Le Moyne D'Iberville*,
 253 F. Supp. 396 (S.D.N.Y. 1966) .................................................................................... 6

*Martinez v. Bloomberg*,
 740 F.3d 211 (2d Cir. 2014) ............................................................................................... 3

*P.M. Enters. v. Color Works, Inc.*,
 946 F. Supp. 435 (S.D. W.Va. 1996) ................................................................................. 7

*Phillips v. Audio Active Limited*,
 494 F.3d 378 (2d Cir. 2007) ........................................................................................... 2, 3

*Pray v. Oughtred & Harrison (Shipping) Ltd.*,
 No. 98 CIV. 0599 JGK, 1999 WL 173591 (S.D.N.Y. Mar. 26, 1999) .............................. 6, 7

*Sazerac Co. v. Falk*,
 861 F. Supp. 253 (S.D.N.Y. 1994) ................................................................................... 10

*Tosco Corp. v. Oxygenated Mktg. & Trading A.G.*,
 No. 98 CIV. 4695(LMM), 1999 WL 328342 (S.D.N.Y. May 24, 1999) ............................. 6

*United Sugars Corp. v. Tropical Worldwide Corp.*,
 Civ. No. 13-2718 ADM/JJG, 2014 WL 1874753 (D. Minn. May 9, 2014) ....................... 8

*Ward v. The Ladders.com, Inc.*,
 3 F. Supp. 3d 151 (S.D.N.Y. 2014) ................................................................................... 6

**Rules & Statutes**

CPLR § 302(a) ........................................................................................................................ 8, 9

Fed. R. Civ. P. 12(b)(6) ............................................................................................................. 1

Meiré[1] respectfully submits this Reply Memorandum of Law and accompanying supplemental declarations of Marc Meiré ("Meiré Supp. Decl.") and Dr. Markus Körner ("Körner Supp. Decl.") in response to the Memorandum of Law ("Rim. Br.") and declarations submitted by the Rimowa Parties in opposition to Meiré's Motion to Dismiss the TPC.

## ARGUMENT

**I.    THE THIRD AND FOURTH TPC CLAIMS ARE EITHER CONTRACT-BASED OR FAIL TO STATE A CLAIM**

The Rimowa Parties state: "Rimowa's causes of action arise from a pending copyright infringement action . . . They are independent of, and do not arise from, the contractual relations defined in the Agreement." Rim. Br. 16. Based on this statement, the Court should dismiss the Rimowa Parties' third and fourth claims for indemnification and contribution as a matter of law under Fed. R. Civ. P. 12(b)(6). As established by the authorities discussed on page 12 of Meiré's Brief (to which the Rimowa Parties offer no response), there is no common law right of indemnification or contribution under U.S. copyright law. The Rimowa Parties' alleged right to indemnification or contribution therefore arises under the Agreement, if at all.

**II.    THE TPC CLAIMS DO NOT ARISE UNDER U.S. COPYRIGHT LAW**

The Rimowa Parties' opposition is largely predicated on two unsustainable assertions: (1) the TPC claims "are rooted in U.S. copyright law and must be decided by a federal court in the United States"; and, as a result, (2) "Germany is not the proper forum for the litigation of disputes concerning the violation of U.S. copyright laws." Rim. Br. 5-9, 16. In advancing these arguments, the Rimowa Parties seek to obfuscate the issues by conflating Laspata's claims against them with their separate and distinct TPC claims against Meiré. The TPC asserts four claims, each arising from Rimowa's contractual relationship with Meiré: (1) breach of contract;

---

[1] Meiré uses the same defined terms in this reply brief as those employed in its Memorandum of Law in support of its motion to dismiss (Dkt. No. 68) ("Meiré Br.").

(2) negligent misrepresentation based on representations allegedly made by Meiré under that contract and predicated on the same facts as the breach of contract claim); (3) contribution; and (4) indemnification. There is no claim that Meiré infringed the Rimowa Parties' U.S. copyrights, nor does Meiré's motion require the German courts to decide any issues of U.S. copyright law.[2]

The Rimowa Parties rely heavily on *Phillips v. Audio Active Limited*, 494 F.3d 378 (2d Cir. 2007). Rim. Br. 9-10. In that case, the Second Circuit affirmed the dismissal of the plaintiff musician's breach of contract claim based on a forum selection clause that specified England as the jurisdiction for any disputes arising under the parties' recording agreement, but reversed the dismissal of the U.S. copyright infringement claim against the same defendant because that claim arose from the creation of the works in dispute rather than rights originating from the parties' contract. *Phillips*, 494 F.3d at 393. *A fortiori*, even if the Court has jurisdiction over Laspata's copyright claims, Second Circuit law still requires dismissal of the Rimowa Parties' TPC claims because "separate treatment of separate claims is appropriate where some but not all claims are subject to the clause." *Id.* (cap. omitted). Here, as established by the Körner Declaration (and undisputed by the Eckhoff Declaration), the TPC claims are encompassed by the forum selection clause under applicable German law. *See* Meiré Br. 11-12; Körner Decl. ¶¶ 15-17.

Further, the TPC claims may never need to be adjudicated by ***any*** court. As the Rimowa Parties themselves assert, the TPC claims "are contingent upon" a ruling in favor of Laspata on its disputed copyright infringement claims against the Rimowa Parties. Rim. Br. 5. In the event that contingency occurs, the Cologne court specified in the Agreement's forum selection clause

---

[2] The Rimowa Parties' authority (Rim. Br. 7-8) is therefore inapplicable. *See, e.g.*, *Halo Creative & Design Ltd. v. Comptoir des Indes Inc.*, 816 F.3d 1366, 1373 (Fed. Cir. 2016) (declining to find Canada an alternative forum for U.S. intellectual property infringement claims); *Greenlight Capital, Inc. v. GreenLight (Switzerland) S.A.*, No. 04 CIV. 3136(HB), 2005 WL 13682 (S.D.N.Y. Jan. 3, 2005) (declining to find Switzerland an alternative forum for U.S. trademark infringement claims); *Firma Melodiya v. ZYX Music GmbH*, 882 F. Supp. 1306, 1318 (S.D.N.Y. 1995) (retaining suit for federal and state intellectual property infringement and false advertising because "[t]he central issues to this case concern alleged violations of United States trademark and copyright laws, not, as ZYX asserts, foreign contract law.").

would simply apply German law (which concededly governs Meiré and Rimowa's relationship (Rim. Br. 10)) to decide whether Meiré has an obligation to reimburse Rimowa for any monetary judgment entered against Rimowa in this Court.

### III. THE TPC SHOULD BE DISMISSED UNDER THE DOCTRINE OF FORUM NON CONVENIENS

"Courts, including the Court of Appeals for the Second Circuit, have recognized that a party may not maintain a suit in federal court when it has committed to litigate claims against its contract counter-party in another jurisdiction, such as the courts of a particular state or foreign nation." *Giordano v. UBS, AG*, 134 F. Supp. 3d 697, 701 (S.D.N.Y. 2015) (citing *Martinez v. Bloomberg*, 740 F.3d 211, 219 (2d Cir. 2014)). As stated in *Phillips*, 494 F.3d at 381, on which the Rimowa Parties rely (*see* Rim. Br. 9-10, 16):

> A plaintiff may think that as the initiator of a lawsuit he is the lord and master of where the litigation will be tried and under what law. But if he is a party to a contract that contains forum selection and choice of law clauses his view of himself as ruler of all he surveys may, like an inflated balloon, suffer considerable loss of altitude.

In deciding such a motion to dismiss, courts impose a heavy burden on the party seeking to evade application of a forum selection clause, and resolve disputed factual questions in favor of the defendant. *Martinez*, 740 F.3d at 216-17.[3]

#### A. The Parties' Actions Confirm That the Forum Selection Clause of the Agreement Was Reasonably Communicated to Rimowa

The Rimowa Parties concede the applicability of the Second Circuit's four-part analysis for deciding a motion to dismiss based on a forum selection clause, but ignore the first factor – "whether the clause was reasonably communicated to the party resisting enforcement" under

---

[3] The Rimowa Parties cite *Atlantic Marine Construction Co. v. U.S. District Court for the Western District of Texas*, 134 S.Ct. 568 (2013) and *Martinez*, 740 F.3d 211, but fail to acknowledge that they "bear[] a 'heavy burden' in overcoming a presumptively enforceable forum selection clause," *Martinez*, 740 F.3d at 219, and that "forum selection clauses should control except in unusual cases" because they "protect [the parties'] legitimate expectations and further[] vital interests of the justice system." *Atl. Marine*, 134 S.Ct. at 581-83. *See* Meiré Br. 7-9.

3

U.S. law (Meiré Br. 9-11) – and create their own substitute – whether the clause "was properly incorporated into the Agreement" under German law. Rim. Br. 10. They then argue that the forum selection clause is invalid because: (1) the Agreement "was formed well before Meiré's reference to the [General Terms and Conditions of Trade (the "GTCs")] in which the clause appears"; and (2) Meiré's "isolated reference" to the GTCs "in the fine print footer of a subsequently issued purchase order was insufficiently clear and distinct to integrate these conditions into the Agreement." Rim. Br. 10-12.

These assertions are demonstrably incorrect. The TPC itself alleges that, "[i]n or about May 9, 2014" – not March 2014, as the Rimowa Parties now allege (Rim. Br. 11) – "Rimowa and Meiré, for good and valuable consideration, entered into an agreement pursuant to which Rimowa hired Meiré and Meiré agreed to design, develop, and create the Lookbook and related advertising campaign for Rimowa." TPC ¶ 19. The Rimowa Parties further allege that Meiré made various representations and promises to Rimowa in the "agreement" as to authorship and copyright ownership of project deliverables. *See* TPC ¶¶ 23-24, 27, 58-59. Although it strains credulity that lay business people in Germany would make the kinds of legal representations alleged in the TPC orally, the Rimowa Parties now claim that "Meiré had never made any mention to Rimowa of any general terms or conditions that would apply to the Lookbook project." Rim. Br. 2, 11. This significantly overstates the artfully-phrased declaration of Birgit Wenners (Rimowa's declarant), which neglects to mention the many ways in which Meiré communicated its GTCs to Rimowa over the course of the parties' long business relationship.

First, Ms. Wenners was previously employed by Meiré and thus was fully aware of the GTCs and the fact that they formed the basis of each agreement entered into by Meiré with its clients. Meiré Supp. Decl. ¶¶ 2, 4. Second, on May 3 and 4, 2011, Ms. Wenners, then employed

4

by Rimowa, received from Meiré a copy of its updated GTCs,[4] *expressly acknowledged receipt thereof on behalf of Rimowa in writing*, and asked Meiré to retransmit a second attachment, an April 29, 2011 letter agreement addressing Meiré's new invoice payment procedures. *Id.* ¶¶ 5-8, Exs. 1-3; Körner Supp. Decl. ¶¶ 3-4, Exs. 1-3. Thereafter, on May 4, 2011, Rimowa returned an executed copy of the letter agreement, which expressly referenced the GTCs on the first page: "Our general terms of delivery and payment, which are exclusively applicable for our mutual business relationship, have been adapted correspondingly (see enclosure)." *Id.* Third, a few months later, the Managing Partner of Meiré met with the CFO of Rimowa to discuss Meiré and Rimowa's ongoing business relationship. During this meeting, the CFO of Rimowa received another copy of the 2011 GTCs and confirmed that Rimowa preferred to continue its relationship with Meiré on a project-by-project basis, with Meiré providing and Rimowa accepting purchase orders for those projects. Meiré Supp. Decl. ¶ 10. Fourth, the Rimowa Parties do not dispute that each of the approximately 480 purchase orders Rimowa accepted, and each of the corresponding invoices it paid over the course of the parties' relationship, expressly referenced the GTCs. Meiré Decl. ¶¶ 7, 9-10; Meiré Supp. Decl. ¶ 11, Ex. 4. Over the course of their relationship, Rimowa never raised any objections to Meiré's GTCs or questioned their applicability. *Id.* ¶¶ 8, 10, 12.

Rimowa's claim that Meiré did not resend a copy of its GTCs in 2014 in connection with the Lookbook project is of no consequence. Wenners Decl. ¶¶ 9, 13, 15. Not only do the GTCs state explicitly that they "shall also apply for future business relationships, even if they are not explicitly agreed upon again" (Agmt., General), but, between merchants, no legal requirement exists that terms and conditions incorporated into an agreement by reference need be furnished to

---

[4] When Meiré first began its relationship with Rimowa in 2008, Meiré provided Rimowa with a copy of its then-operative set of GTCs. In 2011, Meiré updated its GTCs, and the 2011 version was in effect when Rimowa and Meiré entered into the 2014 Agreement at issue. The Meiré GTCs in effect throughout the period of Ms. Wenners' employment and at the beginning of Meiré's relationship with Rimowa contained the same forum selection and choice of law provisions as those included in the 2011 GTCs. Meiré Supp. Decl. ¶¶ 3, 9.

5

the counterparty at all. *See Glencore Ltd. v. Degussa Engineered Carbons L.P.*, 848 F. Supp. 2d 410, 428 (S.D.N.Y. 2012) ("It is also well-settled that, in dealings between merchants, it is not required that an incorporated document be furnished to the counterparty for the incorporation to be effective. The burden is, instead, on the counterparty to request that document."); *Lowry & Co. v. S.S. Le Moyne D'Iberville*, 253 F. Supp. 396, 398 (S.D.N.Y. 1966) ("It is not necessary, in order to incorporate by reference the terms of another document, that such purpose be stated in haec verba or that any particular language be used."); *Hagrpota for Trading & Distr., Ltd. v. Oakley Fertilizer Inc.*, No. 09 Civ. 9779(CM)(KNF), 2010 WL 2594286, at *4-5 (S.D.N.Y. June 18, 2010) ("[T]he fact that the text of the terms and conditions was not transmitted is immaterial. . . . Given the parties' course of dealing, . . . Plaintiff can hardly claim to have been ignorant of the fact that the terms and conditions that were incorporated by reference in the parties' contracts contained an arbitration clause."); *Tosco Corp. v. Oxygenated Mktg. & Trading A.G.*, No. 98 CIV. 4695(LMM), 1999 WL 328342, at *3 (S.D.N.Y. May 24, 1999).[5]

In short, Rimowa received a copy of Meiré's GTCs multiple times, acknowledged receipt in writing, and entered into hundreds of agreements with Meiré governed by those GTCs, with the GTCs explicitly referenced in each and every purchase order Rimowa accepted and every invoice it paid. Meiré Br. 3-4, 10; Meiré Supp. Decl. ¶ 11, Ex. 4. Consequently, Meiré's GTCs were clearly and reasonably communicated to Rimowa, validly incorporated into the parties' agreements by express reference, and form part of the Agreement at issue.[6]

---

[5] *See also Horvath v. Banco Comercial Portugues, S.A.*, 461 F. App'x 61, 63 (2d Cir. 2012) (clause considered "reasonably communicated" to plaintiff despite assertions that forum selection clause appeared in separate "terms and conditions" document allegedly not received by plaintiff and written in a language he did not understand).

[6] Because there is no ambiguity as to the specific document referenced in the Agreement, the cases cited by the Rimowa Parties (Rim. Br. 13) are inapposite, particularly in light of the parties' longstanding merchant-to-merchant business relationship. *See, e.g., Ward v. The Ladders.com, Inc.*, 3 F. Supp. 3d 151, 163 (S.D.N.Y. 2014) (additional section of website terms of use broadly stated that the site "*may* contain other terms and conditions" but did not specify what documents were to be incorporated by reference); *Pray v. Oughtred & Harrison (Shipping) Ltd.*, No.

### B. By Its Terms, the Forum Selection Clause is Mandatory

The GTCs forum selection clause reads: "Cologne is agreed upon as *the* place of jurisdiction and *the* place of performance." Agmt. § 15(2) (emphasis added). Under German law, that forum selection clause is mandatory, not permissive, and encompasses all of the TPC claims. *See* Meiré Br. 11-12; Körner Decl. ¶¶ 8-17; Körner Supp. Decl. ¶¶ 2, 11-13. In this respect, German law is fully consistent with well-established U.S. law, under which "[e]xclusive jurisdiction can be granted to a forum without the use of specific language of exclusion (e.g., 'only,' 'solely,' or 'exclusively'). . . . The language must only indicate that jurisdiction is not being granted to one forum with the possibility of jurisdiction in another forum." *Baosteel Am., Inc. v. M/V "Ocean Lord,"* 257 F. Supp. 2d 687, 689 (S.D.N.Y. 2003). Here, as in *Frietsch v. Refco, Inc.*, 56 F.3d 825, 829 (7th Cir. 1995), "[t]he absence of the indefinite article (the clause says 'place of jurisdiction' is Germany, not 'a place of jurisdiction' is Germany) implies that there is only one place of jurisdiction." And here, as in *Frietsch*:

> [T]he *natural* forum for a suit between Germans over contracts formed in Germany would be – Germany. You would not need a clause to *permit* suit in the very place to which no one could object as the site of the suit.

*Id.*; Körner Supp. Decl. ¶¶ 12-13.

The forum selection clause in Meiré's GTCs is even more clearly mandatory than the clause construed in *Frietsch*, as it does not merely avoid the indefinite article "a" but explicitly uses the definite article "the" to identify Cologne as the only proper jurisdiction for disputes arising under the Agreement. The clause at issue is, on its face, mandatory. *See P.M. Enters. v. Color Works, Inc.*, 946 F. Supp. 435, 440 (S.D. W.Va. 1996) ("Use of the definite article 'the'

---

98 CIV. 0599 JGK, 1999 WL 173591, at *5 (S.D.N.Y. Mar. 26, 1999) (forum selection clause unenforceable where it was "blurred and wholly illegible on the copy . . . received by the plaintiff."). The Rimowa Parties incorrectly claim that German law applies to this first factor of the four-part analysis (Rim. Br. 10-12). Even if it did, the GTCs were validly incorporated into the Agreement under German law. *See* Körner Supp. Decl. ¶¶ 2, 5-10.

7

signifies venue is proper nowhere else; any other interpretation of the provision would render it meaningless."); *United Sugars Corp. v. Tropical Worldwide Corp.*, Civ. No. 13-2718 ADM/JJG, 2014 WL 1874753, at *6 (D. Minn. May 9, 2014) ("Courts uniformly hold that when a forum selection clause specifies a forum as 'the' forum for jurisdiction or venue, rather than 'a' forum, the use of the definite article 'the' signifies a mandatory forum selection clause."); *Apotex Corp. v. Istituto Biologico Chemioterapico S.p.A.*, No. 02 C 5345, 2003 WL 21780965, at *6 (N.D. Ill. July 30, 2003) ("Although the language at issue in this case does not state that Torino, Italy is the only appropriate forum, it does clearly identify Torino as 'the . . . forum' in which the parties agreed to litigate. . . . To accept Apotex's argument that the language in the clause does not mean that a Torino forum is mandatory would be to ignore the definite article used in the clause, and substitute the word 'a' for the word 'the.'").

## IV.   THIS COURT LACKS PERSONAL JURISDICTION OVER MEIRÉ

The Rimowa Parties concede that this Court lacks general jurisdiction over Meiré and do not seek to predicate specific jurisdiction on CPLR § 302(a)(2). Instead, they argue: (1) "Rimowa's causes of action arise from Meiré's business transactions within" New York under CPLR § 302(a)(1); and (2) Meiré committed an out-of-state tort that "caused tortious injury to Rimowa within New York" under CPLR § 302(a)(3). Rim. Br. 18-21.

### A.   The Claims Do Not Arise from Meiré's Business Transactions in New York

As the Rimowa Parties concede (Rim. Br. 21), the transactions purportedly giving rise to the TPC claims took place in Germany, not in New York.[7] The Agreement was entered in Germany. The representations and warranties allegedly made by Meiré were made in Germany. The allegedly infringing mood boards and Lookbook were created, finalized, and approved in Germany. *See* Meiré Decl. Accordingly, the business transactions on which the Rimowa Parties

---

[7] The Rimowa Parties do not dispute Meiré's lack of involvement in the behind-the-scenes video. Meiré Decl. ¶ 20.

predicate their claims all occurred in Germany.[8]

### B.   Meiré Did Not Cause Tortious Injury to Rimowa In New York

As discussed on pages 21-23 of Meiré's Brief (which the Rimowa Parties largely ignore in their opposition), the Rimowa Parties cannot establish the existence of personal jurisdiction under either prong of CPLR § 302(a)(3). The Rimowa Parties contend, however, that CPLR § 302(a)(3) applies because the alleged "creation of mood and story boards, negligent misrepresentations, and creation of the Lookbook in Germany . . . caused injury to Rimowa within New York." Rim. Br. 21. Under the Second Circuit's "situs-of-injury" test, which asks where the original critical events associated with the action or dispute took place, the answer is Germany. *See* Meiré Br. 21-23. Thus, to the extent the Rimowa Parties have any legally cognizable injury at this juncture, that injury would not have been felt in New York, particularly given the fact that Rimowa maintains its principal place of business in Cologne, and the other Rimowa Parties are both Delaware corporations with principal places of business in Texas. *Id.*

The Rimowa Parties further claim they satisfy CPLR § 302(a)(3)(ii) because Rimowa informed Meiré that it "was planning to promote the Lookbook worldwide, including in New York" and Meiré thus "should have reasonably expected its tortious acts to have consequences in New York." Rim. Br. 4, 21. Assuming arguendo Rimowa indeed made such a statement, which

---

[8] There are disputed issues of fact concerning the nature and extent of Meiré's involvement in the New York photoshoot, but even assuming arguendo that "Meiré scouted and selected Pier 59 Studios in New York City for the location" and "arranged for the models, photographers, stylists, production designer and other staff to attend this photoshoot" (Rim. Br. 19), these allegations fail to support specific jurisdiction under CPLR § 302(a)(1). *See, e.g.*, *Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG*, 160 F. Supp. 2d 722, 739-40 (S.D.N.Y. 2001) (finding "no direct nexus between [the defendants'] in-state activity and [a] copyright infringement claim" based upon allegedly unauthorized out-of-state translation, alterations, and performance of the musical Grease, notwithstanding the facts that defendants held auditions for play in New York, purchased $32,000 in supplies from New York stores, and hired New York-based musical coordinator); *Hill v. HSBC Bank PLC*, No. 14CV09745-LTS, 2016 WL 4926199, at *3 (S.D.N.Y. Sept. 15, 2016) ("[C]ommunications with and payments to New York merely to ensure compliance with contract terms negotiated and executed outside of New York do not 'project' a defendant into the state sufficiently to confer personal jurisdiction over it under § 302(a)(1)."). Further, Ms. Wenners herself avers that "Meiré was the creator of the moods boards and the story boards" (Wenners Decl. ¶ 20), so any representation by Meiré to that effect, whether in New York or Germany, was not false or negligent.

Meiré disputes (Meiré Decl. ¶ 23), this vague statement is insufficient to establish jurisdiction. *See, e.g.*, *AWLI Grp., Inc. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 573 (E.D.N.Y. 2011) ("The Second Circuit requires a discernible effort by the defendant to directly or indirectly serve the New York market, and has held that the simple likelihood or foreseeability that a defendant's product will find its way into New York does not satisfy this requirement.").

### V. RIMOWA DISTRIBUTION INC. AND RIMOWA INC. HAVE NOT ESTABLISHED STANDING TO SUE

The TPC does not allege that Meiré entered any agreements or made any representations to Rimowa Distribution Inc. or Rimowa Inc. Paragraph 8 of the Meiré Declaration, which the Rimowa Parties do not refute, establishes that Meiré has had no business dealings or contacts whatsoever with either of these entities. The Rimowa Parties offer no facts or law to support the conclusory allegation in Paragraph 55 of the TPC that these entities are third-party beneficiaries of the agreement between Meiré and Rimowa. "[I]n the absence of any facts supporting [the Rimowa Parties'] conclusory allegations" that Rimowa Distribution Inc. and Rimowa Inc. are third-party beneficiaries, the Court should dismiss the TPC claims asserted by them for failure to state a claim and lack of standing. *Sazerac Co. v. Falk*, 861 F. Supp. 253, 257-58 (S.D.N.Y. 1994); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

### CONCLUSION

The TPC should be dismissed.

Dated: New York, NY
November 28, 2016.

Respectfully submitted,

*/s/ Lisa Pearson*
Lisa Pearson (LP4916)
Sabina A. Vayner (*admitted pro hac vice*)
**KILPATRICK TOWNSEND & STOCKTON LLP**