UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
LASPATA DECARO STUDIO                                        :
CORPORATION,                                                 :
                                          Plaintiff,         :      16 Civ. 934 (LGS)
                                                             :
                        -against-                            :      **OPINION AND ORDER**
                                                             :
RIMOWA GMBH, et al.,                                         :
                                          Defendants.        :
------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 05/08/17

LORNA G. SCHOFIELD, District Judge:

Rimowa GmbH ("Rimowa"), a luggage manufacturer, retained Meiré GmbH & Co. KG ("Meiré") to design an advertising campaign to promote its products. After the campaign's launch, Plaintiff Laspata DeCaro Studio Corporation ("Laspata") filed the instant suit against Rimowa, its subsidiaries Rimowa Inc. and Rimowa Distribution, Inc. (collectively, the "Rimowa Entities") and Meiré, alleging the images used in the campaign infringed Laspata's copyrights. The Rimowa Entities assert four crossclaims against Meiré based on its alleged misrepresentation that it owned the copyrights to the images at issue. Meiré moves to dismiss the crossclaims for lack of personal jurisdiction or, in the alternative, on *forum non conveniens* grounds based on a forum selection clause. For the following reasons, the motion is granted.

## I.  BACKGROUND

### A.  Factual Background

The following is taken from the parties' pleadings and affidavits and is undisputed. *See Martinez v. Bloomberg LP*, 740 F.3d 211, 216 (2d Cir. 2014) ("[I]n evaluating a motion to dismiss based on a forum selection clause, a district court typically relies on pleadings and affidavits . . . .").

Rimowa is a German luggage manufacturer with its principal place of business in Cologne, Germany. Its subsidiaries include Rimowa Inc. and Rimowa Distribution, Inc. Meiré is a German advertising agency. Like Rimowa, its principal place of business is in Cologne.

Beginning in 2008, Rimowa hired Meiré to direct advertising campaigns on an as-needed basis. The parties have entered into agreements for roughly 480 separate projects.

In May 2011, a Meiré employee sent an email to Birgit Wenners, the head of the public relations and communications department at Rimowa, stating, "Please find attached the cover letter of the notification factoring as well as our current T&Cs for your perusal and for signature."[1] Attached to the email were (1) the letter, which addressed Meiré's new financing and invoice payment procedures, and (2) a document, dated April 2011, entitled "General Terms and Conditions of Trade of Meiré GmbH & Co KG" (the "GTCs").[2] Wenners replied that she had received the "new" GTCs and, in another email, sent an executed version of the factoring letter, which references the GTCs. In the Fall of 2011, Marc Meiré, the founder and Managing Partner of Meiré, also provided the GTCs to Rimowa's CFO.[3]

---

[1] As both Meiré and Rimowa are German companies, all of their communications and relevant documents are in German. The parties provided certified translations in connection with this motion, and all references and quotations in this Opinion are based on those translations.

[2] The parties submitted both the original versions of their exhibits in German and translations into English. The English versions have variously translated the term "AGB" into "T&C," "GTCs" and "General Terms and Conditions of Trade." The parties do not contend that any of these translations are incorrect or that there is a meaningful difference among them. For consistency, the Court will use the acronym "GTCs" when referring to the April 2011 General Terms and Conditions of Trade.

[3] The source of the 2011 emails and the reference to Rimowa's CFO is the Supplemental Declaration of Marc Meiré ("Meiré's Supplemental Declaration"). After the motion was fully submitted, the Court issued an order that states "to the extent Rimowa disputes any factual assertions contained in Meiré's Supplemental Declaration, it shall submit a declaration from Ms. Wenners or other competent evidence . . . that provides its basis for contesting those factual assertions." An evidentiary hearing was scheduled to resolve any factual disputes. The Rimowa Entities responded by (1) informing the Court that it could rely on the factual assertions in

The GTCs' opening paragraph provides in part:

All contracts shall be executed under the following General Terms and Conditions of Trade. [Meiré's] General Terms shall apply exclusively. The General Terms shall also apply for future business relationships, even if they are not explicitly agreed upon again.

The last section contains forum selection and choice of law provisions, which state:

Cologne is agreed upon as the place of jurisdiction and the place of performance, if [Meiré's] contractual partner is a merchant within the meaning of the provisions of commercial law.
. . .
The legal relationship between the contractual parties shall be governed exclusively by the law of the Federal Republic of Germany . . . .

At the beginning of their relationship in 2008, Meiré provided Rimowa with its GTCs, and each Meiré invoice Rimowa paid referred to that document. The version of the GTCs in effect when Meiré began its dealings with Rimowa contain the same forum selection clause and choice of law clause as the April 2011 version. No Rimowa employee has ever objected to the GTCs or questioned their applicability to the dealings between Rimowa and Meiré.

In March 2014, Rimowa contacted Meiré about providing services for Rimowa's 2015/2016 "Lookbook" and related advertising campaign. A Lookbook is a catalog that promotes Rimowa's products using a "story" concept. Meiré accepted Rimowa's retention offer and began work on the project. In April 2014, Meiré confirmed by email that it was negotiating an agreement with an individual to provide modeling services for the Lookbook.

In May 2014, Meiré sent an email to Wenners of Rimowa that contained a cost estimate and proposed services for "the development and realization of the photo[shoot]" for the Lookbook. The email lists various services that Meiré would provide, including "creative

---

Meiré's Supplemental Declaration, (2) declining to submit any evidence responding to the Meiré Supplement Declaration and (3) asking that the evidentiary hearing be cancelled. In light of this response, the Court considers the evidence regarding the 2011 emails and Rimowa's CFO to be undisputed.

3

supervision," on-site preparation and "accompaniment" for the photoshoot and selecting the photographs to use in the Lookbook. The estimate states at the bottom of the first page, "We refer to our GTCs." About two weeks later, Wenners replied, "We accept the initial calculation in this form -- naturally it would be nice if we could still save some costs."

Between March 2014 and October 2014, Meiré worked on designing the Lookbook and the "story boards" that would form the basis of the Lookbook's story concept. In October 2014, Wenners and several Meiré employees attended the photoshoot in New York City; the photographer was provided by Defendant Shotview Berlin Photographers Management GmbH ("Shotview"). Meiré used the photographs from the photoshoot in the Lookbook delivered to Rimowa.

Between July 2014 and January 2015, Meiré submitted to Rimowa seven separate invoices for the services it performed for the Lookbook. As did the May 2014 cost estimate, each invoice stated at the bottom, "We refer to our GTCs."

### B. Procedural Background

In February 2016, Laspata sued the Rimowa Entities, alleging the images used in the Lookbook infringed Laspata's copyrights in certain photographs. After the Rimowa Entities filed a third-party complaint against Meiré, Laspata amended the Complaint to add Meiré and Shotview as defendants.

The Rimowa Entities assert four crossclaims against Meiré: breach of contract, negligent misrepresentation, indemnification and contribution. The crossclaims assert that Rimowa relied on Meiré's alleged promise -- which Meiré made as part of the parties' agreement for the Lookbook -- that it was the owner of any copyrights in the allegedly infringing photographs.

Meiré moves to dismiss these claims for lack of personal jurisdiction or, in the alternative, pursuant to the forum selection clause contained in the GTCs.

## II. STANDARD

A party that seeks to enforce a forum selection clause designating a foreign forum should do so through a motion to dismiss for *forum non conveniens*. *See Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Texas*, 134 S. Ct. 568, 580 (2013). In evaluating the motion to dismiss, "a district court typically relies on pleadings and affidavits, but must conduct an evidentiary hearing to resolve disputed factual questions in favor of the defendant." *Martinez*, 740 F.3d at 216–17 (internal citations omitted). Where, as here, the parties do not raise any material factual disputes, the court may decide the motion solely on the basis of the pleadings and the affidavits. *See id.*

A court's determination of foreign law is a question of law. Fed. R. Civ. P. 44.1; *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 92 (2d Cir. 1998). "In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1.

## III. DISCUSSION

### A. The Terms of the Parties' Agreement

The Rimowa Entities contend that there is no forum selection clause at issue because the GTCs were not part of their agreement for the Lookbook project. Although not framed as such by either party, the issue of whether their agreement incorporates the forum selection clause is a threshold issue of contract formation that must be resolved before addressing whether the clause is enforceable as to the crossclaims. *See, e.g.*, *Evolution Online Sys., Inc. v. Koninklijke PTT*

5

*Nederland N.V.*, 145 F.3d 505, 509 (2d Cir. 1998) (reversing district court's dismissal based on forum selection clause and remanding for consideration of whether the parties agreed to a contract and whether that contract contained a forum selection clause); *Bank Leumi USA v. Ehrlich*, 98 F. Supp. 3d 637, 647-50 (S.D.N.Y. 2015) (resolving whether a forum selection clause was in effect before addressing whether it is enforceable against the plaintiff). To decide whether the parties' contract includes the GTCs, the Court applies German law because the parties do. *See Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009); *Allied Dynamics Corp. v. Kennametal, Inc.*, 965 F. Supp. 2d 276, 298 (E.D.N.Y. 2013) (applying the substantive law that the parties agree applies to the issue of whether the forum selection clause was part of the parties' agreement).

The GTCs were validly incorporated into the parties' agreement. Meiré's expert on German law, Dr. Markus Körner, attests that under "settled" German law, general terms and conditions bind merchants, such as Rimowa and Meiré, if one merchant refers to those terms and conditions "in the course of contract negotiations or [at the] conclusion of the contract with another merchant, and the other merchant does not object." Here, during the Lookbook project, Meiré sent a cost estimate and seven invoices, all of which referred to the GTCs. At no point did Rimowa object to the reference or the GTCs. Rather, the evidence indicates that Rimowa accepted Meiré's performance and its final work product, the Lookbook. The parties' prior course of conduct, which Dr. Körner avers is "highly significant under German law," also suggests that the GTCs were incorporated. Marc Meiré's undisputed testimony is that the GTCs were referenced in the approximately 480 cost estimate/purchase orders that Rimowa paid over its eight-year relationship with Meiré. As with the agreement for the Lookbook project, there is no evidence that Rimowa ever objected to the invoices' reference to the GTCs or to the GTCs

themselves.  To the contrary, around April 2011, Rimowa signed a letter that Meiré transmitted along with the GTCs and that explicitly referred to the GTCs.

The Rimowa Entities argue in opposition that the GTCs were not validly incorporated and rely on the declaration of their German law expert, Lars Eckhoff.  According to Mr. Eckhoff, a party's terms and conditions are validly incorporated only if one party refers to them "in a clear and distinct manner" and the other party accepts the reference.  He concludes that the reference in the May 2014 estimate is not "clear and distinct" because it was "in very small font" and located "in the footer," which is "a place where no businessperson would expect such reference."

Mr. Eckhoff's statement of German law is unavailing.  As Dr. Körner notes, the cases on which Mr. Eckhoff relies are distinguishable because they involve circumstances in which there was no explicit reference to the terms and conditions at issue.  *See Itar-Tass Russian News Agency*, 153 F.3d at 92 (courts should weigh conflicting opinions by foreign law experts based on "the persuasive force" of those opinions).  Further, nothing in these cases addresses Mr. Eckhoff's assertion that the font size or location of the reference to the GTCs can render them ineffective.  The reference here is not buried at the bottom of a lengthy contract; rather, it occurs on the first page of each of Meiré's cost estimates and invoices and is legible.  Lastly, Dr. Körner points out that Mr. Eckhoff fails to acknowledge that German law is "less strict" when the case involves two merchants, such as Meiré and Rimowa, that have had frequent dealings.  In light of the undisputed facts and the persuasiveness of Dr. Körner's declaration, the Court concludes that the parties' agreement incorporated the GTCs.

      **B.**    **The Enforceability of the Forum Selection Clause**

The validly incorporated forum selection clause requires dismissal of the Rimowa Entities' crossclaims.  A four-part analysis determines whether dismissal is warranted based on a

forum selection clause. *Martinez*, 740 F.3d at 217.  A court must decide whether (1) the clause was "reasonably communicated to the party resisting enforcement"; (2) the clause was mandatory rather than permissive; and (3) the claims and the parties involved in the suit are subject to the clause.  *Id.* (quoting *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007)).  If these conditions are met, a party resisting enforcement can overcome the presumption of enforceability only by (4) "making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id.* (quoting *Phillips*, 494 F.3d at 383–84).  To analyze the interpretive questions raised by parts two and three of the four-part inquiry, a court applies the law selected by the valid choice-of-law clause -- here, German law.  *Id.* at 217–18.

The forum selection clause was reasonably communicated to Rimowa.  On multiple occasions, Meiré provided to Rimowa the GTCs, which state that they would "apply for future business relationships, even if they are not explicitly agreed upon again" and which contain the forum selection clause.  *See FSB USA, Inc. v. Am. Prods. Prod. Co.*, No. 08 Civ. 1758, 2009 WL 2762744, at *5 (D. Conn. Aug. 24, 2009) (acknowledging that "sending one copy" of standard purchasing terms is enough to "ensure[] that the terms were reasonably communicated").  The GTCs were also referenced in hundreds of invoices that Meiré sent to Rimowa, including the costs estimate and seven invoices that Meiré sent to Rimowa in connection with the Lookbook project.  Thus, Meiré gave Rimowa sufficient notice of the GTCs even though they were not provided to Rimowa when the parties agreed to the Lookbook project.  *See Horvath v. Banco Comercial Portugues, S.A.*, 461 F. App'x 61, 63 (2d Cir. 2012) (summary order) (rejecting contention that forum selection clause was not reasonably communicated to the plaintiff who denied having received the terms and conditions at the time he agreed to a contract that

incorporated the general terms and conditions by reference); *Bank Leumi USA*, 98 F. Supp. 3d at 650 (enforcing forum selection clause incorporated by reference).

Turning to the second part of the analysis, a forum selection clause is mandatory if it "confers exclusive jurisdiction on the designated forum." *Phillips*, 494 F.3d at 386. The forum selection clause here provides: "Cologne is agreed upon as the place of jurisdiction . . . if [Meiré's] contractual partner is a merchant within the meaning of the provisions of commercial law." Here, it is undisputed that Rimowa is a merchant under German law because it is organized as a limited liability company -- i.e., a GmbH.

The clause confers exclusive jurisdiction on the courts in Cologne. The parties' German law experts agree that, when interpreting a forum selection clause under German law, a court must determine the parties' intention, which may be achieved by looking to the wording of the agreement. The clause is clear: Cologne is "*the* place of jurisdiction," not a place of jurisdiction. As such, jurisdiction does not exist elsewhere. Courts applying German law have held similar language to be mandatory. *See Trade Wind Distrib., LLC v. Unilux Ag*, No. 10 Civ. 5716, 2011 WL 4382986, at *2, *6–7 (E.D.N.Y. Sept. 20, 2011) ("Place of jurisdiction for all contractual legal disputes . . . is Trier[, Germany]."); *Future Indus. of Am., Inc. v. Advanced UV Light GMBH*, No. 09 Civ. 966, 2010 WL 7865077, at *3–5 (D. Conn. Sept. 1, 2010) ("[C]ourts of Essen, Germany shall have jurisdiction for all disputes arising from and in connection with this Agreement . . . ."), *aff'd*, 434 F. App'x 46 (2d Cir. 2011) (summary order); *Gita Sports Ltd. v. SG Sensortechnik GmbH & Co. KG*, 560 F. Supp. 2d 432, 436, 442 (W.D.N.C. 2008) ("The place of fulfillment and court of venue is Mörfelden-Walldor[, Germany].").

The Rimowa Entities dispute this interpretation, arguing that had Meiré intended jurisdiction to be exclusive, it would have said so explicitly, as did the choice of law provision

9

(which includes the word "exclusively").  However, as Rimowa's own expert attests, the lack of "an explicit reference" to "exclusivity" in a forum selection clause does not weigh "against such exclusivity" under German law.  The language used is clear that *the* place of jurisdiction is Cologne and, by extension, nowhere else.  *See Trade Wind Distrib.*, 2011 WL 4382986, at *7 (applying German law to forum selection clause and rejecting the argument that the clause is permissive because the contract "uses the word 'exclusively' in other parts of the contract" but not the forum selection clause).

Turning to the third part of the analysis, the forum selection clause encompasses the crossclaims and the parties involved.  *See Martinez*, 740 F.3d at 218.  Dr. Körner avers that German law provides that "[i]n the absence of explicit restrictions to its scope," a forum selection clause is to be interpreted to include "all potential claims arising from the contractual relationship between the [p]arties to be determined in a single venue (here, Cologne)."[4]  The Rimowa Entities do not contest this interpretation of German law.

In this case, the crossclaims are based on the same allegations -- that, as part of the parties' agreement, Meiré represented that it owned the copyrights to the allegedly infringing images and that Rimowa relied on these representations.  The crossclaims arise from the contract because they are predicated on (1) Meiré's representations contained in the parties' agreement and (2) Meiré's alleged failure to abide by those representations.  Even the negligent misrepresentation claim, while sounding in tort, originates from the parties' agreement as that crossclaim alleges Meiré's representations violated "its duties *under the agreement* with

---

[4] When assessing applicability of a forum selection clause to particular claims, a court "examine[s] the substance of [the plaintiff's] claims as they relate to the precise language of the clause."  *Phillips*, 494 F.3d at 389.  Although the forum selection clause does not include the phrase "arise from," the parties do not dispute that, under German law, the question is whether the crossclaims arise from the contract.

10

Rimowa." *Cf. Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 724 (2d Cir. 2013) ("A contractually-based forum selection clause also covers tort claims against non-signatories if the tort claims ultimately depend on the existence of a contractual relationship between the signatory parties." (internal quotations marks omitted)).

Although Rimowa's subsidiaries, Rimowa Distribution, Inc. and Rimowa Inc., are not parties to the agreement between Meiré and Rimowa, the forum selection clause applies to their crossclaims. "In order to bind a non-party to a forum selection clause, the [non-party] must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound." *Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 701 (2d Cir. 2009) (quoting *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993)). Assuming, as the crossclaims allege, that Rimowa Distribution, Inc. and Rimowa Inc. "are third-party beneficiaries of the agreement between Meiré and were therefore harmed by Meiré's breach," then they are bound by the forum selection clause. *See, e.g.*, *Overseas Ventures, LLC v. ROW Mgmt., Ltd., Inc.*, No. 12 Civ. 1033, 2012 WL 5363782, at *5 (S.D.N.Y. Oct. 26, 2012) ("The 'closely related' test is necessarily satisfied where the defendant is a third-party beneficiary of the agreement . . . ."). Even if these subsidiaries are not third-party beneficiaries, they are covered by the forum selection clause because their crossclaims derive entirely from the terms of the agreement. *See Malmsteen v. Universal Music Grp., Inc.*, No. 10 Civ. 3955, 2012 WL 2159281, at *5 (S.D.N.Y. June 14, 2012) ("A non-party is closely related to a dispute if its interests are completely derivative of and directly related to, if not predicated upon the signatory party's interests or conduct." (internal quotation marks omitted)).

The Rimowa Entities argue that their crossclaims do not arise from the agreement but rather Laspata's underlying copyright infringement claims against them. This argument

11

misapprehends the inquiry, which is whether Rimowa's crossclaims, not Laspata's claims, arise from the contract.  The cases cited by the Rimowa Entities are distinguishable because they involve copyright claims that -- unlike Rimowa's crossclaims -- are not based on the existence of any contract.  *See Phillips*, 494 F.3d at 389, 391 (holding copyright claims "do not arise out of the contract because [the plaintiff] has asserted no rights or duties under that contract" and the plaintiff "denies that contract has any role or relevance whatever with respect to his copyright claims"); *Arma v. Buyseasons, Inc.*, 591 F. Supp. 2d 637, 646 (S.D.N.Y. 2008) (noting that forum selection clause does not apply to claims that "do not assert rights under the contract").

Because the forum selection clause is presumptively enforceable, dismissal of the crossclaims is proper unless the Rimowa Entities "make[] a prima facie showing that the clause should be set aside."  *Phillips*, 494 F.3d at 392.  A court will refrain from enforcing an otherwise valid forum selection clause only if:

> (1) its incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum in which suit is brought; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court.

*Starkey v. G Adventures, Inc.*, 796 F.3d 193, 198 (2d Cir. 2015) (quoting *Martinez*, 740 F.3d at 228).  "The party claiming unreasonableness of a forum selection clause bears a heavy burden . . . ."  *New Moon Shipping Co. v. MAN B & W Diesel AG*, 121 F.3d 24, 32 (2d Cir. 1997).

The Rimowa Entities, which fail to cite any of the four exceptions, have not overcome the presumption of enforceability.  They argue that because German courts lack "sufficient expertise to interpret and apply U.S. copyright law," the remedy available in Germany would be "unpredictable and unsatisfactory."  But to show enforcement would be unreasonable on this

basis, "it is not enough that the foreign law or procedure merely be different or less favorable than that of the United States. Instead, the question is whether the application of the foreign law presents a danger that the [plaintiff] 'will be deprived of *any* remedy or treated unfairly.'" *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1363 (2d Cir. 1993) (internal citations omitted) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254–55 (1981)). The Rimowa Entities have not made the requisite showing. As Dr. Körner attests, Rimowa could bring claims to address the allegations covered by its crossclaims in the Regional Court of Cologne, and the court would be able to adjudicate its claims. Given the availability of the foreign forum, the fact that one underlying issue -- i.e., whether Rimowa or Meiré infringed Laspata's copyrights -- implicates U.S. copyright law does not render the otherwise valid forum selection clause unenforceable. *See Metal Bulletin Ltd. v. Scepter, Inc.*, 192 F. Supp. 3d 377, 382 (S.D.N.Y. 2016) (holding that choice-of-law provision selecting English law was enforceable even though plaintiff brought copyright claims because plaintiff had not shown "that there is a danger that it will be deprived of *any* remedy or treated unfairly" under English law (internal alterations and quotation marks omitted)).

In sum, the Rimowa Entities' crossclaims are dismissed in light of the enforceable forum selection clause. Because application of the forum selection clause is dispositive of Meiré's motion, its alternative argument that the Court lacks personal jurisdiction over it is not addressed.

## IV. CONCLUSION

For the foregoing reasons, Meiré's motion to dismiss pursuant to the forum selection clause is GRANTED, and Meiré's crossclaims are dismissed in their entirety.

The Clerk of Court is respectfully directed to close the motion at Docket Number 67.

Dated: May 8, 2017
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

13