# Frankfurt Kurnit Klein + Selz PC

**Andrew J. Ungberg**

488 Madison Avenue, New York, New York 10022

T (212) 705 4868    F (347) 438 2195

aungberg@fkks.com

June 26, 2017

**VIA ECF**

The Hon. Kevin N. Fox
United States District Court
Southern District of New York
40 Foley Square, Room 2203
New York, New York 10007

RE:  *Laspata DeCaro Studio Corp. v. Rimowa GmbH*, et al., No. 16-cv-0934

Dear Judge Fox:

We represent Plaintiff Laspata DeCaro Studio Corp. ("LD") in the above-captioned copyright infringement action. In advance of the pre-motion conference scheduled for June 28, 2017, we write to reply briefly to the June 22, 2017 letter (the "Letter") of defendants Rimowa GmbH, Rimowa Distribution Inc., and Rimowa Inc. (collectively, "Rimowa").

As is apparent from its Letter, Rimowa seeks to withhold from its production documents showing Rimowa's revenues from the sale of the products advertised in Rimowa's infringing product catalogue (the "Lookbook") for the period of 2014–2016. Essentially, Rimowa asks that the Court disregard the broad scope of discovery permitted under Federal Rule 26(b), and instead require LD to meet its ultimate burden of proof now, in the midst of fact discovery. For good reason, this is not the law and nothing in Rimowa's Letter establishes otherwise.

*First*, none of the authority cited by Rimowa supports its proposed limitation of fact discovery. Rimowa insists that LD is not entitled to revenue information *in discovery* because LD purportedly has "failed to demonstrate a causal nexus between [its discovery request] and the alleged copyright infringement or the relevant time period." Letter at 2 (*citing On Davis v. The Gap, Inc.*, 246 F.3d 152 (2d. Cir. 2001)). In other words, Rimowa argues that, before Rimowa produces proof of its gross revenue, which is expressly called for under 17 U.S.C. 504(b), LD must first carry its ultimate burden of proof on the question of a causal nexus between its revenues and the infringement. Rimowa's formulation turns the plain language of Rule 26(b) and 17 U.S.C. 504(b) on its head, all while ignoring that *On Davis* — and all of the cases on which Rimowa relies — were decided after the close of discovery or on summary judgment. *See On Davis*, 246 F.3d at 158–160 (affirming grant of summary judgment based on plaintiff's failure to introduce sufficient evidence of causal nexus *at summary judgment stage*); *Mager v. Brand New School*, 03-cv-8552(DC), 2004 WL 2413978 (S.D.N.Y. Oct. 28, 2004) (granting defendants' partial motion for summary judgment against *pro se* plaintiff); *Fleurimond v. N.Y. Univ.*, No. CV 09-3739 (ADS) (AKT), 2011 WL 3273876, at *5 (E.D.N.Y. July 29, 2011) (denying motion to compel, and declining to reach issue of whether causal link need be shown,

The Hon. Kevin N. Fox
June 26, 2017
Page **2** of **3**

on grounds that plaintiff had not requested indirect revenue information before discovery closed).  Indeed, all of Rimowa's case law is easily distinguishable by the mere fact that this action is in the middle of fact discovery.  Nothing in *On Davis* or any of the other cases alter the scope of discovery under Federal Rule 26(b): LD is entitled to take discovery on "any nonprivileged matter that is relevant to any party's claim or defense . . . ." *Id.*

In fact, Rimowa blatantly mischaracterizes the holding of *On Davis*.  Contrary to Rimowa's suggestion, the *On Davis* court did not provide a basis for limiting the scope of discovery in a copyright lawsuit.  Rather, the Second Circuit held that, despite the absence of any limiting language in the statute, the term "gross revenue" under Section 504(b) of the Copyright Act means "gross revenue reasonably related to the infringement, not unrelated revenues." *On Davis*, 246 F.3d at 160.  In distinguishing between "reasonably related" and "unrelated" revenues, the court drew an analogy to an anthology of poems, only one of which was owned by the plaintiff.  *Id.*  The court stated that the plaintiff would not meet its burden by submitting proof of the publisher's gross revenues from its publication of unrelated titles, but "would require evidence of the revenues realized from the sale of the anthology containing the infringing poem." *Id.*  Here, similarly, LD does not seek to discharge its burden by submitting proof of Rimowa's gross revenues from its sales of unrelated products, but seeks evidence of the revenues relations from Rimowa's sale of the *products contained within the Lookbook*.  Thus, Rimowa's position, that it should be required only to produce sales data related to the products advertised using the infringing images, interprets the concept of "gross revenue" far too narrowly and finds no support in *On Davis*.

*Second,* Rimowa misrepresents the content of the Lookbook.  One-third of the photos featured in the Lookbook (4 of 12) infringe LD's images.  And these four infringing images advertised *four different product lines*[1] of suitcases, not the single "Topas Line" Rimowa claims.  *See* Letter at 1.  Moreover, and critically, one of the infringing images constitutes *the cover of the Lookbook*, thereby promoting *all* of the products advertised therein.  Given Rimowa's admission that the Lookbook drove a significant uptick in its 2015 sales, there is already ample evidence to show the requisite causal nexus between Rimowa's revenues from the sale of the products depicted in the Lookbook and the alleged infringements, and to justify LD's requested discovery.  *See Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 796–97 (8th Cir. 2003) (causal nexus between infringing commercial and car sales shown with evidence that "Audi enthusiastically presented the commercial to its dealers," sales during the period exceeded projections and the commercials had high ratings for consumer recall); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 517 (9th Cir. 1985) (holding that "promotional purpose" of musical revue show at casino/resort – "to draw people to the hotel and the gaming tables" – entitled copyright owner of infringed songs to recover "indirect profits from the hotel and gaming

---

[1] The Letter falsely states that "the 'products' advertised in the allegedly infringing images are limited to a single product line, Rimowa Topas suitcases (the 'Topas line')."  Letter at 1.  This is contradicted by the Lookbook itself, in which four different product lines —"Classic Flight," "Topas Titanium," "Limbo Carmona Red," and "Bossa Nova"— are depicted in the infringing images.

The Hon. Kevin N. Fox
June 26, 2017
Page **3** of **3**

operations, as well as direct profits from the show itself"); *Madden v. DreamWorks LLC*, No. 07 Civ. 5273 (E.D.N.Y. July 6, 2007) (copyright owner showed causal nexus between movie containing display of infringing air freshener and producer's gross receipts from movie with evidence of image's importance to film and producer's use of air freshener as a promotional item for the film at trade shows).

*Finally,* Rimowa's remaining objections to LD's request are baseless. LD's request is neither overbroad nor unduly burdensome. In particular, Rimowa takes issue with the timing of the request, which seeks revenue information for 2014–2016, a period representing one year prior to the date of the Lookbook's publication through the end of the year after it was pulled from distribution. LD needs this broader cross-section of revenue data, including to (i) establish a baseline from which to compare Rimowa's sales during and after distribution of the Lookbook; and (ii) corroborate Rimowa's admission that sales increased as a result of the Lookbook's promotional reach. Moreover, Rimowa's proposal to limit its document production to the time period January 2015 through October 2015 appears to be based on the time period in which the Lookbook was circulated in the United States. (Letter at 1.) But LD has evidence showing that the Lookbook was distributed internationally, and is plainly entitled to recover foreign profits derived from domestic infringement of its copyrights. *Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988) (noting that plaintiffs may pursue foreign-earned revenues "when the type of infringement permits further reproduction abroad-such as the unauthorized manufacture of copyrighted material in the United States" and collecting cases). Thus, Rimowa's artificial time and geographic limitations should be rejected.

\* \* \* \*

For the foregoing reasons, Plaintiff respectfully requests that the Court accept its prior letter submissions in lieu of a longer motion and order the Rimowa defendants to produce revenue information relating to product lines depicted in the infringing Rimowa advertising materials for the period 2014 through 2016, inclusive.

    Respectfully Submitted,
    **Frankfurt Kurnit Klein & Selz, P.C.**
    */s/ Andrew J. Ungberg*
    Andrew J. Ungberg
    Jeremy S. Goldman
    Lily Landsman-Roos
    *Attorneys for Plaintiff Laspata DeCaro Studio Corp.*