**FRANKFURT KURNIT KLEIN & SELZ, P.C.**
Jeremy S. Goldman
Maura J. Wogan
Andrew J. Ungberg
Lily Landsman-Roos
488 Madison Avenue, 10th Floor
New York, New York 10022
Phone:  (212) 980-0120
Fax:  (212) 593-9175

*Attorneys for Plaintiff Laspata DeCaro Studio Corp.*

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LASPATA DECARO STUDIO CORP.,<br><br>Plaintiff,<br><br>v.<br><br>RIMOWA GMBH, RIMOWA DISTRIBUTION INC., AND RIMOWA INC., MEIRÉ GMBH & CO. KG, d/b/a MEIRÉ AND MEIRÉ, and SHOTVIEW BERLIN PHOTOGRAPHERS MANAGEMENT GMBH, d/b/a SHOTVIEW ARTISTS MANAGEMENT<br><br>Defendants, | Case No. 16-cv-934 (LGS)(KNF) |

**PLAINTIFF LASPATA DECARO STUDIO'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL DOCUMENTS RELATED TO RIMOWA'S GROSS REVENUES**

**Table of Contents**

PRELIMINARY STATEMENT ................................................................................................. 1

SUMMARY OF RELEVANT FACTS ..................................................................................... 3

    A.    Laspata Decaro ............................................................................................... 3

    B.    The Americana Manhasset Campaign ............................................................ 3

    C.    Rimowa Misappropriates The Speechless Photographs To Create The Infringing Photographs ................................................................................. 4

    D.    Rimowa Uses The Infringing Photographs As The Centerpiece Of Its 2015 Marketing And Public Relations Campaign ............................................. 5

    E.    Procedural History ......................................................................................... 6

    F.    The Instant Dispute ....................................................................................... 7

LEGAL STANDARD ............................................................................................................... 7

ARGUMENT ........................................................................................................................... 9

I.    Documents Related To Rimowa's Gross Revenues For All Its Products Are Relevant To LD's Copyright Claim ............................................................. 9

    A.    The Plain Language Of Section 504(B) Establishes That Rimowa's Gross Revenues Are Relevant And Discoverable ............................................ 9

    B.    Rimowa's Gross Revenues Are Further Discoverable Because They Are Reasonably Related To Its Infringement ............................................ 10

II.    Rimowa's Argument that LD Will Not Be Able to Show a "Causal Nexus" is Not a Valid Basis to Withhold Discoverable Information ................................. 12

III.    LD Has Substantial Evidence Of A Causal Nexus Between The Infringement And Rimowa's Profits In 2015 ....................................................... 15

IV.    LD Is Entitled To Documents Related To Rimowa's Revenue From Its Global Sales, Not Just Sales In The United States ...................................................... 19

CONCLUSION ...................................................................................................................... 21

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.I.A. Holdings S.A. v. Lehman Bros.*,
   No. 97 Civ. 4978, 2000 WL 763848 (S.D.N.Y. June 12, 2000)……………….......................8

*Andreas v. Volkswagen, Inc.*,
   336 F.3d 789 (8th Cir. 2003) ...............................................................................15, 16, 18, 19

*Balsley v. LFP, Inc.*,
   691 F.3d 747 (6th Cir. 2012) ...............................................................................................14

*Burns v. Imagine Films Entm't, Inc.*,
   164 F.R.D. 589 (W.D.N.Y. 1996).....................................................................................9, 12

*Chan v. Rag & Bone Indus., LLC*,
   No. 15 Civ. 6319 (RWS), 2016 WL 7495184 (S.D.N.Y. Dec. 21, 2016) ..............................8

*Complex Sys., Inc. v. ABN Ambro Bank N.V.*,
   No. 08 Civ. 7497(KBF), 2013 WL 5970065 (S.D.N.Y. Nov. 8, 2013)..................................13

*Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*,
   314 F.R.D. 85 (S.D.N.Y. 2016) .............................................................................................8

*Fournier v. Erickson*,
   242 F. Supp. 2d 318 (S.D.N.Y. 2003).............................................................................13, 14

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,
   772 F.2d 505 (9th Cir. 1985) ................................................................................................18

*Hendricks v. Physicians Skin & Weight Centers, Inc.*,
   No. 12....................................................................................................................15, 16

*Kaseberg v. Conaco, LLC*,
   No. 15 Civ. 01637 (JLS) (DHB), 2016 WL 3997600 (S.D. Cal. July 26, 2016),
   *reconsideration denied*, No. 15 Civ. 01637 (JLS) (DHB), 2017 WL 1020455 (S.D. Cal. Mar.
   16, 2017) ..............................................................................................................................12

*Lottie Joplin Thomas Tr. v. Crown Publishers, Inc.*,
   592 F.2d 651 (2d Cir. 1978).................................................................................................14

*Madden v. DreamWorks LLC*,
   No. 07 Civ. 5273, ECF No. 76 (E.D.N.Y. July 6, 2007) ............................................16, 17, 19

*Mannion v. Coors Brewing Co.*,
No. 04 Civ. 1187, 2007 WL 3340925 (S.D.N.Y. Nov. 7, 2007) .............................................14

*Melendez v. Greiner*,
No. 01 Civ. 07888 (SAS) (DF), 2003 WL 22434101 (S.D.N.Y. Oct. 23, 2003).....................8

*Montesa v. Schwartz*,
No. 12 Civ. 6057, 2016 WL 3476431 (S.D.N.Y. June 20, 2016)........................................8, 9

*Oceans of Images Photography, Inc. v. Foster & Smith, Inc.*,
No. 8:11 Civ. 01160–T–23AEP, 2012 WL 12904220 (M.D. Fla. Mar. 27, 2012)................13

*On Davis v. The Gap, Inc.*,
246 F.3d 152 (2d Cir. 2001), *as amended* (May 15, 2001)..................................................9,10

*Polar Bear Prod., Inc. v. Timex Corp.*,
384 F.3d 700 (9th Cir. 2004) ....................................................................................12, 16, 17

*Shady Records, Inc. v. Source Enterprises, Inc.*,
No. 03 Civ. 9944 (GEL), 2005 WL 14920 (S.D.N.Y. Jan. 3, 2005) ...........................14, 15, 18

*Sheldon v. Metro-Goldwyn Pictures Corp.*,
106 F.2d 45 (2d Cir. 1939), *aff'd*, 309 U.S. 390 (1940) ....................................................19, 20

*Silberman v. Innovation Luggage, Inc.*,
No. 01 Civ. 7109 (GEL), 2003 WL 1787123 (S.D.N.Y. Apr. 3, 2003) ..................................17

*Taylor v. Stave, Inc.*,
No. 15 Civ.04190-FMO (ASX), 2016 WL 7626439 (C.D. Cal. Feb. 18, 2016) ....................13

*Thornton v. J Jargon Co.*,
580 F. Supp. 2d 1261 (M.D. Fla. 2008).................................................................................14

*Update Art, Inc. v. Modiin Pub., Ltd.*,
843 F.2d 67 (2d Cir. 1988)......................................................................................................20

*Urband & Lazar Music Pub., Inc. v. Carter*,
No. 08 Civ. 3566, 2009 WL 799759 (E.D. La. Mar. 23, 2009)..............................................13

**Statutes**

17 U.S.C. § 504(b) ............................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 26(b)(1)....................................................................................................7, 9, 10, 13

Fed. R. Civ. P. 37..............................................................................................................................1, 8

Local Rule 37.2...............................................................................................................................7

Fed. R. Civ. P. 30(b)(6)...........................................................................................................6, 11, 15

Plaintiff Laspata Decaro Studio Corporation ("LD"), submits this Memorandum of Law in support if its motion, pursuant to Fed. R. Civ. P. 37, to compel defendants Rimowa GmbH, Rimowa Distribution Inc., and Rimowa Inc. ("Rimowa") to produce "[a]ny and all documents and communications reflecting revenues from the sale of Rimowa products from one year prior to the time period of the Rimowa campaign to date, in all geographic areas in which any portion of the Rimowa Campaign was viewable in any format."

## PRELIMINARY STATEMENT

This copyright infringement action arises from high-end luggage manufacturer Rimowa's unauthorized use of creative agency LD's photographs as the centerpiece of Rimowa's marketing, advertising and public relations campaign in 2015.  As a result of Rimowa's infringement, LD seeks to recover its actual damages, as well as any profits of Rimowa that are attributable to the infringement.  *See* 17 U.S.C. § 504(b).

To establish Rimowa's profits, the Copyright Act provides that LD "is required to present proof only of the infringer's gross revenue," and Rimowa is required to prove its "deductible expenses and the elements of profit attributable to factors other than the copyrighted work."  *Id.* Thus, to meet its burden of proof expressly established by the statute, LD seeks discovery of documents related to Rimowa's gross revenue.  Nevertheless, Rimowa has steadfastly refused to produce virtually any documents related to its gross revenue, relying on a variety of meritless arguments to justify its improper withholding of discovery.  The Court should overrule Rimowa's objections and grant LD's motion to compel in its entirety.

*First*, under Section 504(b) of the Copyright Act, evidence of Rimowa's gross revenue not only is relevant to LD's claim, but is an essential part of LD's burden of proof.  Moreover, LD is entitled to obtain documents related to Rimowa's gross revenue for *all* its products both

1

because the evidence is "relevant" to LD's claim (which is the standard on this motion to compel) and because Rimowa prominently used LD's copyright-protected photographs to promote and sell all of its products.  The infringing photographs were not only the centerpiece of Rimowa's promotional activities in 2015: they were the entirety of those activities.  Not surprisingly, given this vast distribution, the infringing photographs appeared in nearly every space (both physical and virtual) that Rimowa sold its products.

*Second*, LD's right to obtain discovery of Rimowa's gross revenue is not conditioned on LD first showing a "causal nexus" between Rimowa's infringement and its gross revenue.  Even if the Court determines (contrary to controlling Second Circuit precedent) that LD bears the burden of proving a causal nexus at summary judgment or trial, LD need not meet that burden here, on this motion, to obtain discovery of a matter that is directly relevant to LD's claims.  If anything, evidence related to Rimowa's gross revenue is relevant to whether there *is* a causal nexus in the first place, and the related question of whether and to what extent Rimowa's profits are attributable to the infringement.  The Court should reject what is, in effect, Rimowa's premature and meritless motion *in limine* to limit the evidence the jury will hear and the scope of damages LD can seek in this case.

*Third*, although, for the reasons stated below, LD need not establish a causal nexus to obtain the requested discovery, LD already has substantial evidence of a direct causal connection between Rimowa's use of the infringing photographs and its gross revenue.  Indeed, Rimowa *admitted*, both in a press release and in deposition testimony, that its infringing "Lookbook" was one of the factors that resulted in Rimowa having a record sales year in 2015.  This key admission, as well as the prominent use of LD's materials, the millions of euros spent by

Rimowa to distribute and publicize the infringing photographs, and myriad other facts discussed below, more than suffice to demonstrate a causal nexus and shift the burden to Rimowa.

*Finally*, LD is entitled to documents related to Rimowa's revenue from its global sales, not just its sales in the United States.  Under well-established law, because Rimowa committed the predicate act of copyright infringement in the United States (conducting the three-day photo shoot that generated the infringing photographs in New York), LD is entitled to a constructive trust over *all* profits that flow from that infringement, wherever such profits are generated.

For these reasons, and the reasons discussed below, the Court should grant LD's motion to compel.

## SUMMARY OF RELEVANT FACTS

### A.  Laspata Decaro

LD is a creative marketing agency that creates highly-stylized and distinctive advertising campaigns for top-tier brands around the world, including Estee Lauder, Victorinox, Harry Winston, Perry Ellis and Warner Brothers Records, among many others.  LD has a worldwide reputation for delivering best-in-class photography for high-end, fashion, lifestyle and luxury brands by orchestrating every last aspect of a photo shoot, including set creation and design, lighting, model casting, wardrobe, props, positioning, timing and image retouching.  LD's work has appeared widely in popular online and print publications, such as *Vanity Fair*, *W. Vogue*, *New York Times T Style*, *Women's Wear Daily* and *The New York Times*.

### B.  The Americana Manhasset Campaign

In or around 2012, LD created a well-known campaign for its client, Americana Manhasset, which featured a series of 1920s-era inspired photographs.  As part of Americana Manhasset's marketing and public relations efforts, photographs from the campaign were used to

create a glossy "Lookbook" titled *Speechless* that promoted the brands and products sold at Americana Manhasset's high-end shopping center on Long Island.  The photographs also were widely distributed around the world.  In addition to the *New York Times* and other notable publications, the world-famous fashion magazine *Women's Wear Daily* ("WWD") published an online article praising the campaign and photographs and included a gallery featuring eight of the photographs. (*See* Exs. A and B.)[1]

C.  *Rimowa Misappropriates The Speechless Photographs To Create The Infringing Photographs*

The uncontested facts in this case establish that Rimowa, its advertising agency Meiré, and its photographer Shotview used four of the eight photographs featured in the WWD article (including the cover of the *Speechless* Lookbook) (the "LD Photographs") to create four rip-off photographs that formed the centerpiece of Rimowa's global marketing efforts in 2015–2016 (the "Infringing Photographs").  Indeed, the evidence shows that, to create the Infringing Photographs, Meiré simply took the four LD Photographs, superimposed images of Rimowa's luggage, (Ex. C at 97:4-6), and gave them to the photographer with directions that he reproduce them using different models (*id.* at 213:13–216:3).  This is not mere speculation.  Rimowa's behind-the-scenes footage of the photo shoot – which took place right here in New York City – shows the four LD Photographs prominently displayed at the shoot and identified as the "shot list." (Ex. D.)[2]  Not surprisingly, at the end of the three-day shoot, the resulting photographs

---

[1] All Exhibits referenced herein are attached to the Declaration of Lily Landsman-Roos ("Landsman-Roos Decl."), submitted along with this memorandum of law.
[2] Rimowa's behind-the-scenes video is attached as Exhibit E to the Landsman-Roos Decl. Screenshots from that video, depicting the "shot list" being consulted during the shoot, are attached as Ex. F.

were nearly identical replicas of the LD Images, as illustrated by the following example

(comparing the covers of *Speechless* and *The Journey* lookbooks)[3]:

| Original LD Photo | Altered LD Image | Final Rimowa Infringing Photo |
|---|---|---|
|  | | |

### D. Rimowa Uses The Infringing Photographs As The Centerpiece Of Its 2015 Marketing And Public Relations Campaign

After the New York photo shoot, Rimowa returned to Germany where, following a brief

post-production period, it began using the Infringing Photographs as the centerpiece of its global

marketing and public relations campaign in 2015.  The Infringing Photographs were used to

create Rimowa's 2015 Lookbook, titled *The Journey* (the "Lookbook"), which "is meant to

cover all products that are sold by Rimowa."  (Ex. H at 91:4-6.)  Rimowa printed and distributed

89,000 copies of its Lookbook.  (*Id*. at 154:4-22.)  Along with the Lookbook, it sent out 9,000

DVDs containing digital copies of the images from the photo shoot, including the ones in the

---

[3] *See also* Ex. G (providing side-by side comparisons of each of the LD Photographs with the corresponding Infringing Photograph).

Lookbook and others, to its global public relations agencies.  (*Id.*)  It sent 500 copies of the Lookbook to each of its 130 stores around the world.  (*Id*. at 168:24-169:5.)

Rimowa used the Infringing Photographs in myriad other ways.  Rimowa paid between four and five million euros to have images from the photo shoot, including two of the Infringing Photographs, appear as single-page or two-page spread advertisements in magazines distributed around the world.  (*Id.* at 158:15-159:10; 162:6-163:12; 196:13-197:5.)  The Infringing Photographs were enlarged and adorned every Rimowa store and hung in nearly every Rimowa point of sale around the world.  (*Id.* at 70:9-71:6; 178:16-19; 179:9-10.)  They decorated Rimowa's booths at trade shows for retailers (one of Rimowa's largest sources of revenue) (*id.* at 178:16-19), were featured at other Rimowa promotional events (*id.* at 186:22-188:9), and greeted visitors to Rimowa's homepage.  (*Id.* at 189:17-21; 190:17-25.)  In 2015, it was nearly impossible for a retailer or customer to purchase a Rimowa product without viewing one of the Infringing Photographs.  Indeed, the images from the photo shoot, including the four Infringing Photographs, were the only promotional images used by Rimowa in 2015.  (*Id.* at 201:5-11.)  They were the face of the Rimowa brand.

   *E.  Procedural History*

LD commenced this action against Rimowa on February 8, 2016, and served its First Requests for the Production of Documents on April 28, 2016.  Despite LD's efforts to push discovery forward, substantial motion practice between the defendants – including Meiré and Shotview, who Rimowa joined by third-party complaint on April 25, 2016 – delayed discovery for over a year.  It is only since May 8, 2017 that all parties have meaningfully engaged in discovery, including by producing documents and taking the depositions of the parties' Rule 30(b)(6) designees.

*F.  The Instant Dispute*

On April 28, 2016, LD served its First Requests for Production of Documents.  (Ex. I.)

Request No. 32 sought:

> **Any and all documents and communications reflecting revenues from the
> sale of Rimowa products from one year prior to the time period of the
> Rimowa campaign to date, in all geographic areas in which any portion of
> the Rimowa Campaign was viewable in any format.**

Rimowa objected to the request as "overly broad, irrelevant and not reasonably calculated to lead

to the discovery of admissible evidence."  (Ltr. Dated June 22, 2017, ECF No. 117, at 2.)

Rimowa further argued that "LD ha[d] failed to demonstrate a causal nexus between [the]

request and the alleged copyright infringement[.]"  (*Id.*)

By this motion, LD seeks to compel production of any and all documents responsive to

Request No. 32.[4]  On August 24, 2017, LD requested a pre-motion conference under Local Rule

37.2, (*see* ECF No. 142), and the Court responded by inviting this Motion.  (*See* ECF No. 143.)

For the reasons set forth below, Rimowa's sales revenue for all its products from 2014

through 2016, inclusive, is relevant information that LD is plainly entitled to in discovery.

## LEGAL STANDARD

Fed. R. Civ. P. 26(b)(1) states that "[p]arties may obtain discovery regarding any

nonprivileged matter that is relevant to any party's claim or defense. . . . Information within this

scope of discovery need not be admissible in evidence to be discoverable."  Relevancy "has been

---

[4] This motion differs from LD's prior application to the Court, in which, on June 13, 2017, in an
effort to narrow the dispute, LD agreed to limit the scope of Request No. 32 to sales revenue
information relating to all "product lines" of luggage depicted in the Lookbook.  (*See* ECF Nos.
116, 119.)  The Court granted that request, ordering Rimowa to produce revenue information for
all "product lines" shown in the Lookbook.  (*See* Hearing Tr. dated June 28, 2017 (ECF No. 124
at 6:5–8.)  Although Rimowa produced certain sales data, it limited its production to the specific
luggage models depicted in the Lookbook based on Rimowa's proffered definition of the term
"product line," which the Court accepted without ruling on the relevance of that broader category
of documents.

construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Montesa v. Schwartz*, No. 12 Civ. 6057, 2016 WL 3476431, at *4 (S.D.N.Y. June 20, 2016) (quoting *Oppenheimer Fund. Inc. v, Sanders*, 437 U.S. 340, 351 (1978)). The "law does not require that a party seeking discovery make an overwhelming showing of relevance. Rather, 'any possibility' of relevance is sufficient to warrant discovery." *A.I.A. Holdings S.A. v. Lehman Bros.*, No. 97 Civ. 4978, 2000 WL 763848, at *3 (S.D.N.Y. June 12, 2000).

"If a party objects to discovery requests, that party bears the burden of showing why discovery should be denied." *Chan v. Rag & Bone Indus., LLC*, No. 15 Civ. 6319 (RWS), 2016 WL 7495184, at *1 (S.D.N.Y. Dec. 21, 2016). "Specifically, the resisting party must show how, 'despite the broad and liberal construction afforded the federal discovery rules, each request is not relevant, or how each request is overly broad, burdensome, or oppressive, by submitting affidavits or offering evidence revealing the nature of the burden.'" *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 314 F.R.D. 85, 88 (S.D.N.Y. 2016) (quoting *Sokol v. Wyeth, Inc.*, No. 07 Civ. 8442, 2008 WL 3166662, at *3 (S.D.N.Y. Aug. 4, 2008)).

"When a party fails to respond to discovery requests, Federal Rule of Civil Procedure 37 permits the requesting party to apply for an order compelling disclosure or discovery." *Melendez v. Greiner*, No. 01 Civ. 07888 (SAS) (DF), 2003 WL 22434101, at *2 n.1 (S.D.N.Y. Oct. 23, 2003).

## ARGUMENT

I. **Documents Related To Rimowa's Gross Revenues For All Its Products Are Relevant To LD's Copyright Claim**

   A. *The Plain Language Of Section 504(B) Establishes That Rimowa's Gross Revenues Are Relevant And Discoverable*

   In this action, LD seeks to recover from Rimowa LD's actual damages as well as Rimowa's profits that are "attributable to the infringement." 17 U.S.C. § 504(b). Controlling Second Circuit authority has interpreted "gross revenue" to mean gross revenue "reasonably related" to the infringement. *On Davis v. The Gap, Inc.*, 246 F.3d 152, 160 (2d Cir. 2001), *as amended* (May 15, 2001). As set forth below, LD has ample evidence that Rimowa's gross revenue for all its products is "reasonably related" to its infringement.

   The analysis of what portion of Rimowa's revenues are relevant begins with Section 504(b) of the Copyright Act, which provides:

   > The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and **any profits of the infringer that are attributable to the infringement** and are not taken into account in computing the actual damages. In establishing the infringer's profits, **the copyright owner is required to present proof only of the infringer's gross revenue**, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work. (Emphasis added).

Thus, based on the plain language of the statute, not only are Rimowa's gross revenues relevant to LD's claim, but they are an essential component of LD's burden of proof. As such, documents related to Rimowa's gross revenue are discoverable under Rule 26(b)(1), Fed. R. Civ. P., since they "bear[] on, or [] reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Montesa*, 2016 WL 3476431 at *4 (quotations omitted). *See also Burns v. Imagine Films Entm't, Inc.*, 164 F.R.D. 589, 592 (W.D.N.Y. 1996) (granting copyright plaintiff's motion to compel discovery, including revenues and expenses, and noting that "[a]s the Plaintiffs are entitled to any profits attributable to the infringement, including any indirect

profits, the information sought by Plaintiffs' Discovery Request is relevant"). For this reason, alone, the Court should grant LD's motion to compel.

   B. *Rimowa's Gross Revenues Are Further Discoverable Because They Are Reasonably Related To Its Infringement*

      Although not the controlling standard on a motion to compel, the Second Circuit has determined that, to prevail on a claim for indirect profits under Section 504(b), the copyright owner must present evidence of "gross revenue reasonably related to the infringement, not unrelated revenues." *See On Davis v. The Gap, Inc.*, 246 F.3d 152, 160 (2d Cir. 2001), *as amended* (May 15, 2001). Specifically, the *Davis* court held that revenues derived from the sale of products promoted by the infringing works were reasonably related to the infringement. The infringing advertisement in that case promoted only certain products within the Gap, Inc. clothing label. *Id.* Despite this narrow use of the infringing advertisement, the *Davis* plaintiff nonetheless tried to discharge his Section 504(b) burden by presenting evidence of the gross revenues of Gap Inc.'s parent company—reflecting sales not only from Gap Inc. but also from unrelated brands, like Banana Republic, Old Navy Clothing Co., GapKids, babyGap, and others, whose goods "were in no way promoted by the advertisement." *Id.* at 161. The Court rejected this, noting that "the statutory term 'infringer's gross revenue' should not be construed so broadly as to include revenue from lines of business that were unrelated to the act of infringement." *Id.* at 160.

      Here, there is overwhelming evidence that Rimowa's gross revenue generated from all its products is reasonably related to the infringement alleged in this case. The *Davis* rule was applied on summary judgment, so it is not the relevant standard on a motion to compel, where LD must simply show relevancy under Rule 26(b)(1), Fed. R. Civ. P. But even if the Court required LD to meet the "reasonable relation" test on this motion, LD would easily meet this

burden.  Rimowa used the four Infringing Photographs to market and sell not only a particular

Rimowa product or line of products, but *all of Rimowa's products*.  Evidence of this fact includes

the following:

- Rimowa admitted that "**the lookbook is meant to cover all products that are sold by Rimowa**," not a particular product, product line or collection;[5]

- The Lookbook comprises a total of twelve "motifs,"[6] *four of which* (1/3) are the Infringing Photographs;

- One of the Infringing Photographs is used as the *cover* of Rimowa's 2015 Lookbook;[7]

- At least two of the Infringing Photographs adorned every Rimowa store worldwide and were displayed on enlarged posters at retailers and other points of sale worldwide, where Rimowa marketed and sold all its products (not just those shown in the Lookbook);[8]

- The Infringing Photographs appeared on the homepage for Rimowa's website, where all of its products are promoted and sold;[9]

- At least two of the Infringing Photographs were used in full-page and two-page spread print advertisements in magazines circulated around the world to promote all Rimowa products, not a particular product, product line or collection;[10] and

- Rimowa's sole source of revenue is from the sale of luggage and small leather goods, with luggage sales providing the vast majority; there are no other divisions or product lines.[11]

These facts distinguish Rimowa's infringement from the single Gap Inc. promotional photograph

in *Davis*, 246 F.3d at 161.  Because the Infringing Photographs promoted all Rimowa products,

LD is entitled to – and intends to – carry its ultimate burden under Section 504(b) by presenting

evidence of Rimowa's revenues from the sale of all of its products.  But without the discovery

---

[5] Rimowa's Rule 30(b)(6) designee testified that Rimowa made wide-ranging use of the Infringing Photographs to promote *all* of Rimowa's products, agreeing that "the lookbook is meant to cover all products that are sold by Rimowa."  (Ex. H at 91:4–6.)  She further testified that the purpose of the Lookbook was to "build awareness for the entire brand of Rimowa" not just for "a particular product[.]" (*Id.* at 90:23–91:3.)

[6] Ex. H at 137:11; Ex. G; Ex. J.

[7] Ex. H at 184:14-16; Ex. J.

[8] Ex. H at 70:9-71:6; 178:16-19; 179:9-10.

[9] Ex. H at 189:17-21; 190:17-25.

[10] Ex. H at 158:15-159:10; 162:6-163:12; 196:13-197:5.

[11] Ex. H at 48:2-7; 213:24-214:14.

sought by this motion, LD will be unfairly and prematurely prevented from accessing documents to support that essential element of its claim.

## II.   Rimowa's Argument That LD Will Not Be Able To Show A "Causal Nexus" Is Not A Valid Basis To Withhold Discoverable Information

Rimowa objects to producing revenue-related information on the ground that it believes LD has an affirmative obligation to show a "causal nexus" between Rimowa's alleged infringement and its gross revenues.  (*See* June 22, 2017 Ltr. (ECF. No. 117) at 2.)  Rimowa improperly cites *Davis* as support for this objection—overlooking the fact that the *Davis* court made no mention of a "causal nexus" requirement.  Rimowa appears to be urging this Court to adopt a test from a case in the Ninth Circuit which held that, to recover indirect profits under Section 504(b), "the copyright claimant must first show a causal nexus between the infringement and the gross revenue."  *See Polar Bear Prod., Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004).  The Court should reject Rimowa's causal nexus objection and grant LD's motion to compel for at least three reasons.

*First*, the "causal nexus" requirement arises at summary judgment or trial—not on a motion to compel.  Even if this Court ultimately chooses to apply the causal nexus test (which, as stated below, has never been adopted by the Second Circuit), LD is not required to meet that burden as a condition to obtaining discovery.  Rather, as stated above, given the plain language of Section 504(b), there is no question that documents related to Rimowa's gross revenue are at least *relevant* to LD's claim and are therefore discoverable.  *See, e.g.*, *Burns*, 164 F.R.D. at 592 (holding copyright defendant's revenue and expenses information relevant and granting plaintiff's motion to compel); *Kaseberg v. Conaco, LLC*, No. 15 Civ. 01637 (JLS) (DHB), 2016 WL 3997600, at *7 (S.D. Cal. July 26, 2016), *reconsideration denied*, No. 15 Civ. 01637 (JLS) (DHB), 2017 WL 1020455 (S.D. Cal. Mar. 16, 2017) (declining to impose a causal nexus

requirement on a motion to compel because "this case is still at the discovery stage" and noting that in cases cited by the defendant, which all involved summary judgment or trial, "plaintiff was able to at least put on evidence relating to profits; evidence that was obtained through discovery"); *Taylor v. Stave, Inc.*, No. 15 Civ.04190-FMO (ASX), 2016 WL 7626439, at *2 (C.D. Cal. Feb. 18, 2016) (although copyright defendant urged imposition of the causal nexus requirement, "the discovery dispute before the Court is governed by Rule 26(b)(1)" and "Plaintiff's request for non-privileged financial information is relevant to its claims"); *Oceans of Images Photography, Inc. v. Foster & Smith, Inc.*, No. 8:11 Civ. 01160–T–23AEP, 2012 WL 12904220, at *2 (M.D. Fla. Mar. 27, 2012) (granting motion to compel documents related to gross revenues from alleged infringer of underwater photographs where it was "without question that the gross revenues were at the very least *relevant* for the purposes of discovery"); *Urband & Lazar Music Pub., Inc. v. Carter*, No. 08 Civ. 3566, 2009 WL 799759, at *3 (E.D. La. Mar. 23, 2009) (granting motion to compel evidence related to sales revenue where the case was "in its infancy" and "[i]ndeed, in establishing the defendant's profits, the copyright owner is required to prove the defendant's gross revenue with respect to the product line or lines which indirectly benefitted from the alleged infringing use of the copyrighted work").[12]

   *Second*, the Second Circuit has never adopted the "causal nexus" test. Rather, the prevailing test in the Second Circuit is the one articulated in *Davis*, which, as previously

_____

[12] Notably, the issue of the admissibility of documents showing an alleged infringer's indirect profits is frequently litigated in motions *in limine* before trial—underscoring the premature nature of the discovery dispute now before the Court. *See, e.g. Fournier v. Erickson*, 242 F. Supp. 2d 318, 327 (S.D.N.Y. 2003) (denying defendant's motion *in limine* and holding that the plaintiff may offer evidence of profits from "overall sales" of the product which was the subject of an advertising campaign featuring the infringing photograph); *Complex Sys., Inc. v. ABN Ambro Bank N.V.,* No. 08 Civ. 7497(KBF), 2013 WL 5970065, at *1 (S.D.N.Y. Nov. 8, 2013) (question of admissibility of indirect profits reserved for a motion *in limine*, filed by defendant after summary judgment on liability was granted in plaintiff's favor).

described, requires only that the copyright owner present proof of the infringer's "gross revenue reasonably related to the infringement, not unrelated revenues." *Davis*, 246 F.3d at 160.  Once the copyright owner meets that burden, the burden shifts to the alleged infringer to show which elements of its profit that are not attributable to the infringement.  *Id.*[13]

*Third*, even if this Court were ultimately to impose a "causal nexus" requirement, Rimowa's revenues are probative of the existence and extent of that causal nexus.  Courts routinely consider an infringer's revenues before, during, and after the infringement as evidence

---

[13] Although certain district courts in the Second Circuit have employed the "causal nexus" test without explanation, S.D.N.Y. courts which have examined the issue more closely have observed that the Second Circuit has never modified the *Davis* test nor imposed an additional burden on copyright owners to prove causation before shifting the burden to the infringer.  *See Mannion v. Coors Brewing Co.,* No. 04 Civ. 1187, 2007 WL 3340925, at *2 (S.D.N.Y. Nov. 7, 2007) (Kaplan, J.) (noting that several S.D.N.Y. opinions, including *Fournier v Erickson*, 242 F. Supp. 2d 318, 327–28 (S.D.N.Y. 2003) and *Shady Records, Inc. v. Source Enters., Inc.*, No. 03 Civ. 9944 (GEL), 2005 WL 14920, at *22–23 (S.D.N.Y. Jan. 3, 2005) "suggest that proof of the advertiser-infringer's gross revenues for the relevant line of business would suffice" under *Davis*); *Fournier v. Erickson*, 242 F. Supp. 2d 318, 327 (S.D.N.Y. 2003) (applying *Davis* test and noting that "the Second Circuit necessarily recognizes that evidence of damages offered by a copyright owner to establish his initial burden need not reflect profits derived solely and directly from the infringing activity"); *Shady Records, Inc. v. Source Enterprises, Inc.*, No. 03 Civ. 9944 (GEL), 2005 WL 14920, at *22 (S.D.N.Y. Jan. 3, 2005) (denying defendant's motion for summary judgment barring indirect profits and applying *Davis* rule).  Declining to require the copyright holder to prove causation before shifting the burden is in keeping with the Second Circuit's acknowledgement that "placing the apportionment burden on the wrongdoer is sensible, since in most cases all information regarding profits is exclusively in the possession of the infringer." *See Lottie Joplin Thomas Tr. v. Crown Publishers, Inc.*, 592 F.2d 651, 657 (2d Cir. 1978).

Courts in other Circuits have similarly recognized that the "causal nexus" test is not the applicable standard in the Second Circuit and have refused to adopt it in light of the plain language of Section 504(b).  *See Balsley v. LFP, Inc.*, 691 F.3d 747, 769 (6th Cir. 2012) (surveying other Circuits' interpretation of "attributable to" in 17 U.S.C. § 504(b), and noting that, "[t]o the extent the phrase 'attributable to' is applicable to the copyright owner's burden . . . it simply means that the gross revenue number that the copyright owner presents must have a reasonable relationship to the infringing activity"); *Thornton v. J Jargon Co.*, 580 F. Supp. 2d 1261, 1279 (M.D. Fla. 2008) (differentiating Second Circuit's "reasonable relationship" test from Ninth and other Circuit's "causal nexus" tests, adopting Second Circuit test, and denying motion for summary judgment).

tending to show a causal link.  *See, e.g.*, *Shady Records, Inc. v. Source Enterprises, Inc.*, No. 03 Civ. 9944 (GEL), 2005 WL 14920, at *22 (S.D.N.Y. Jan. 3, 2005) (evidence of magazine's revenue before and after infringement was evidence of "the required link" between infringement and profits); *Andreas v. Volkswagen, Inc.*, 336 F.3d 789, 797 (8th Cir. 2003) (evidence of causal nexus supported by fact that "sales of the TT coupe during the period that the commercial aired were above Audi's projections").  This again underscores the premature and illogical nature of Rimowa's objections.

Finally, documents related to Rimowa's gross revenue are relevant not only to LD's own burden under Section 504(b), but also to Rimowa's burden of establishing "elements of profit" it claims are "attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b).

### III.   LD Has Substantial Evidence Of A Causal Nexus Between The Infringement And Rimowa's Profits In 2015

Although, for the reasons stated, LD need not (at least at this stage) present proof of the causal link, LD already has overwhelming evidence of the causal relationship between the Infringing Photographs and Rimowa's profits.  In fact, Rimowa *admitted*, both in a press release and in the deposition of its Rule 30(b)(6) witness, that the Lookbook, along with its Infringing Photograph on the cover, was "one part of the whole game" of Rimowa achieving record results in 2015.  (Ex. H at 210:11-16; Ex. K.)  Indeed, the facts of this case bear nearly every hallmark of a successful indirect profits case, including:

- **The Infringing Photographs were the centerpiece of Rimowa's marketing, advertising and PR efforts in 2015**.[14]  Rimowa controlled its brand and image by dictating what promotional materials its stores, dealers, and other points of sale could use. (Ex. H at 60:6–61:22.)  The images from the Lookbook shoot, including at least two of the Infringing Photographs, were *the only promotional images* used by Rimowa

---

[14] *Hendricks v. Physicians Skin & Weight Centers, Inc.*, No. 12 SACV 2169 (RNBx), 2014 WL 12561621, at *3 (C.D. Cal. Feb. 24, 2014) (causal nexus shown where infringing "before and after" photographs were "a central part of a substantial advertising campaign").

worldwide, (*Id.* at 74:18-20; 201:5-11), and they were used in every aspect of Rimowa's 2015 marketing efforts: for the Lookbook, paid media, in-store displays, billboards, its website, social media and public relations campaigns. (*Id.* at 59:3-13; 70:9-71:6; 74:18-20; 178:16-19; 179:9-10; 189:17-21; 190:17-25.)

- **The Infringing Photographs comprised a substantial portion of the Lookbook and the related campaign**.[15] (Ex. H at 137:11.) One of the Infringing Photographs was the cover of the Lookbook and the Infringing Photographs make up four of twelve motifs in the Lookbook. (Ex. J.) The Infringing Photos also were two of four images used for Rimowa's paid media and to adorn its stores and points of sale. (Ex. H at 71:7-17.)

- **Rimowa spent significant amounts, and dedicated a significant portion of its advertising budget, on the campaign featuring the Infringing Photographs**.[16] Rimowa spent many *millions of euros* to produce, distribute and create branding and advertising using the Infringing Photographs. (Ex. H at 67:6; 74:5-17.) Rimowa spent € 4 or € 5 million in media buys in 2015, based on the images from the Lookbook. It spent approximately € 1.022 million on production of the Lookbook, € 80,000–100,000 on printing costs, € 40,000 on production of the behind-the-scenes video, and an additional € 4-5 million on media buys. (Ex. H at 225:16-226:9; 226:20-227:19.)

- **The Infringing Photographs were widely distributed to promote the sale of Rimowa's products**.[17] The Infringing Photographs appeared as print advertisements in fashion, travel, luxury and other high-end magazines around the world. (Ex. H at 158:15-159:10.) They were featured on the Rimowa website, including on the starting page. (*Id.* at 189:17-21; 190:17-25.) The "behind-the-scenes" video of the photo shoot (including footage of Rimowa slavishly copying the LD Images) was shown at various points of sale (*Id.* at 173:19-22), in promotional videos on television stations, (*Id.* at 142:12-24), and on Rimowa's website. (*Id.* at 172:4.)

---

[15] *See Andreas,* 336 F.3d 789, 798–97 (8th Cir. 2003) (reversing district court's decision to vacate jury award and reinstating indirect profits award to copyright plaintiff where an infringing voiceover was the "centerpiece" of defendant's car commercial); *Hendricks*, 2014 WL 12561621 at *3 (causal nexus shown, in part, because "[t]he before and after photos" – the infringed material – "are prominently displayed on the billboards, taking up nearly half of the billboard space"); *Madden v. DreamWorks LLC*, No. 07 Civ. 5273, ECF No. 76, at 10–15 (E.D.N.Y. July 6, 2007) (denying defendant's motion for summary judgment and holding that copyright owner showed causal nexus between movie containing display of infringing air freshener and producer's gross receipts from movie with evidence of image's importance to film).

[16] *Hendricks,* 2014 WL 12561621, at *3 (causal nexus shown, in part, because "[d]uring the infringing period, Defendant spent 15 percent of its revenue on advertising, and 44.7 percent of advertising expenditures went to billboard advertising").

[17] *Polar Bear Prod.*, 384 F.3d at 712 (affirming indirect profits award and observing that the plaintiff had "demonstrated a sufficient causal nexus through evidence that the Mountain Dew booklet contained an advertisement featuring the infringing material, that customers who ordered Timex Expedition watches through the Mountain Dew promotion would have seen the advertisement, and that Timex profited from the promotion").

And, of course, the Infringing Photographs appeared in Rimowa's carefully-crafted Lookbook—including as its cover.  In late 2014 and early 2015, Rimowa's corporate offices printed and distributed 89,000 copies of the physical Lookbook, (*Id*. at 90:20-91:3), including sending 500 copies to each of its stores around the world.  (*Id*. at 168:24-169:5). Nine thousand copies of the Lookbook were sent with a DVD containing digital versions of the images shown in the Lookbook, as well as others from the same photo shoot, for easy distribution.  (*Id*. at 167:13-15.)  Those 9,000 packages were sent to public relations agencies with instructions to spread and support Rimowa brand awareness by placing the photographs in the press.  (*Id*. at 60:6-61:7; 72:3-13.)  The Infringing Photographs appeared in prominent online fashion and luxury publications, including *Vogue*, *Elle*, *Estrelando*, and other publications from around the world. (*Id*. at 158:15-159:10.)

- **The Infringing Photographs decorated Rimowa stores and were displayed at other points of sale to promote the sale of Rimowa's luggage and other products**.[18]  In fact, the Lookbook images, including, very often, the Infringing Photographs, adorned every Rimowa store worldwide.  (Ex. H at 70:9-71:6; 74:5-17.)  They also were placed in Rimowa's dealers' stores[19] and at its "shop-in-shops."[20]  (*Id*. at 179:9-10.)

- **The Infringing Photographs were used at trade shows and other promotional events to promote the sale of Rimowa's products.**[21]  Rimowa's booth at an annual trade fair in Las Vegas for retailer customers (one of Rimowa's largest sources of revenue) prominently featured the Infringing Photographs. (Ex. H at 178:16-19.)

---

[18] *Silberman v. Innovation Luggage, Inc.*, No. 01 Civ. 7109 (GEL), 2003 WL 1787123, at *10 (S.D.N.Y. Apr. 3, 2003) (granting copyright plaintiff's motion for summary judgment as to liability, reserving computation of infringing profits for trial, and noting that "[i]n a case such as this, where defendants used the infringing items as interior decor of their luggage stores, and did not sell the infringing items, it may well be that profits from the infringement are not great. However, plaintiffs are entitled to recover infringing profits to the extent any such profits can be demonstrated, and that calculation is also reserved for a trier of fact and is not appropriate for summary judgment").

[19] Rimowa works with "dealers" meaning other retailers that sell Rimowa products around the world, including for example, Bloomingdale's and Zappos. (Ex. H at 49:19-24.)

[20] "Shop-in-shops" are described as self-contained booths or areas selling only Rimowa luggage, and featuring Rimowa branding, within a larger store.  (Ex. H at 50:8-14.)

[21] *Madden v. DreamWorks LLC*, No. 07 Civ. 5273, ECF No. 76, at 10–15 (E.D.N.Y. July 6, 2007) (copyright owner showed causal nexus between movie containing display of infringing air freshener and producer's gross receipts from movie with evidence of producer's use of air freshener as a promotional item for the film at trade shows); *Polar Bear Prod.*, 384 F.3d at 711–12 (9th Cir. 2004) (causal nexus shown where video montage featuring infringing photographs was displayed at twelve trade shows where products were sold).

- **Rimowa publicly attributed the company's outstanding financial results in 2015 to the Lookbook campaign that included the Infringing Photographs.**[22] For the first time ever, in 2015, Rimowa published its half-year revenues, because "the figures were good – more than good – and it was the wish of [the CEO] to publish [them]." (Ex. H at 207:12-20.) In August 2015, the company issued a press release announcing that "RIMOWA generated preliminary group sales of around 167.1 million euros" representing a 33.3% increase from the previous year. (Ex. K.) The press release tied the company's success to the Lookbook and its accompanying campaign: "***With a new lookbook and accompanying campaign together with store openings in prime locations . . . RIMOWA was able to consolidate its market share at the start of 2015, even strengthening its position***." (*Id.*) (emphasis added). Rimowa's corporate designee agreed that, consistent with this public announcement, the Lookbook was one factor that caused the company's inflated sales in the first half of 2015. (Ex. H at 210:11-16.)

- **Rimowa experienced an uptick in sales during the relevant time period**.[23] As stated, after the first half of 2015, Rimowa publicly proclaimed an increase in sales revenues, and explicitly tied that increase to the Lookbook containing the Infringing Photographs. Rimowa's corporate designee testified that 2015 proved to be one of the strongest sales years in the company's history. (Ex. H at 217:21-25.)

- **Rimowa expressed enthusiasm for the campaign that included the Infringing Photographs.**[24] Rimowa's CEO Dieter Morszeck was extraordinarily pleased with 2015 campaign. He flew to New York and attended the photo shoot in person. (Ex. H at 137:24-25.) After the Lookbook neared its completion, he commented: "I find the pictures outstanding. It will be a fantastic campaign." (*Id.*; Ex. L.) And most tellingly, for the first time in Rimowa's history, he elected to publicly announce the company's financial results after the first half of 2015, expressly attributing the company's success to the Lookbook. (Ex. H at 207:12-20; Ex. K.)

Thus, even if the Court requires LD to demonstrate a causal nexus before allowing its claim for indirect profits to proceed, the above facts present ample "non-speculative evidence linking the alleged infringement to the defendants' profits[.]" *Madden v. Dreamworks LLC*, 07

---

[22] *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 517 (9th Cir. 1985) (reversing district court's denial of indirect profits in part because defendant's annual report attributed increase in sales to promotional value of show containing infringing song).

[23] *See Shady Records, Inc. v. Source Enterprises, Inc.*, No. 03 Civ. 9944 (GEL), 2005 WL 14920, at *23 (S.D.N.Y. Jan. 3, 2005) (considering uptick in sales of magazine that included infringing material and denying copyright defendant's motion for summary judgment on recoverability of profits); *Andreas*, 336 F.3d at 797 (reinstating indirect profits award in part because "sales of the TT coupe during the period that the commercial aired were above Audi's projections").

[24] *Andreas*, 336 F.3d at 797 ("The evidence established that Audi enthusiastically presented the commercial to its dealers as an important and integral part of its launch of the TT coupe into the U.S. market.").

18

Civ. 5273, ECF No. 76, at 15 (E.D.N.Y. July 2, 2009) (allowing copyright owner to present to jury evidence of causal nexus between unauthorized use of copyright-protected air freshener in *Transformers* movie and studio's profits from ticket sales); *Andreas*, 336 F.3d at 797–98 (concluding, based on prominence and success of infringing advertising campaign and company's internal statements attributing success to it, that "the jury had enough circumstantial evidence to find that the commercial contributed to the profitable introduction of the TT coupe, which shifted the burden to Audi of showing what effect other factors had on its profits").

**IV.   LD Is Entitled To Documents Related To Rimowa's Revenue From Its Global Sales, Not Just Sales In The United States**

Rimowa also has taken the position that, at most, only revenues from Rimowa's U.S. operations are relevant, arguing that the Copyright Act does not apply extraterritorially.  (*See* Ex. M.)  This argument has been flatly rejected by the Second Circuit and the Supreme Court.

In *Sheldon v. Metro-Goldwyn Pictures Corp.*, 106 F.2d 45, 52 (2d Cir. 1939), *aff'd*, 309 U.S. 390  (1940), Judge Learned Hand held that a copyright owner may seek profits from international distribution of infringing materials, so long as the "situs" of the infringement was in the United States.  In *Sheldon*, a playwright sued a movie studio for copyright infringement based on the studio's misappropriation of his play.  In determining the amount of movie profits that the playwright should be awarded, the court considered whether it was appropriate to include profits generated from foreign exploitation of the film.  The court held that it was:

> The Culver Company made the negatives in this country, or had them made here, and shipped them abroad, where the positives were produced and exhibited. The negatives were "records" from which the work could be "reproduced", and it was a tort to make them in this country.  The plaintiffs acquired an equitable interest in them as soon as they were made, which attached to any profits from their exploitation, whether in the form of money remitted to the United States, or of increase in the value of shares of foreign companies held by the defendants. We need not decide whether the law of those countries where the negatives were exploited, recognized the plaintiffs' equitable interest; we can assume arguendo

19

> that it did not, for, as soon as any of the profits so realized took the form of
> property whose situs was in the United States, our law seized upon them and
> impressed them with a constructive trust, whatever their form.

*See id.* at 52.

Here, the Infringing Photographs were created at a photo shoot in New York City. Rimowa paid for the photographer, advertising agency, models, creative directors, crew, and its own CEO and other representatives to fly to New York for a three-day shoot in October 2014. (*See* Ex. H at 136:20-137:3.)  Thus, there is no dispute that Rimowa made the Infringing Photographs "in this country, or had them made here, and distributed abroad," where they were exhibited and exploited.  The shots taken at the photo shoot were "records" from which the Infringing Photographs could be "reproduced," and it was "a tort to make them in the country." As such, LD acquired an "equitable interest" as soon as the Infringing Photographs were created, which "attached to any profits from their exploitation."  Whether the law of the foreign countries recognized LD's equitable interest is irrelevant, because "as soon as any of the profits so realized took the form of property whose situs was in the United States, our law seized upon them and impressed them with a constructive trust, whatever their form."  *Sheldon*, 106 F.2d at 52.  *See also Update Art, Inc. v. Modin Pub., Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988) (holding that copyright plaintiffs may pursue foreign-earned revenues "when the type of infringement permits further reproduction abroad—such as the unauthorized manufacture of copyrighted material in the United States" and collecting cases (citations omitted)).

## CONCLUSION

For the foregoing reasons, LD respectfully requests that the Court compel Rimowa to produce any and all documents and communications reflecting revenues from the sale of Rimowa products from one year prior to the time period of the Rimowa campaign to date, in all geographic areas in which any portion of the Rimowa Campaign was viewable in any format.

Dated: New York, New York
       August 29, 2017

       FRANKFURT KURNIT KLEIN & SELZ, PC

       By:_____*/s/ Jeremy S. Goldman*_____
              Jeremy S. Goldman
       Maura J. Wogan
       Andrew J. Ungberg
       Lily Landsman-Roos
       488 Madison Avenue
       New York, New York 10022
       Phone:  (212) 980-0120
       Fax:    (212) 593-9175
       jgoldman@fkks.com
       mwogan@fkks.com
       aungberg@fkks.com
       llandsmanroos@fkks.com

21