UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/20/18

-----------------------------------------------------------X

LASPATA DECARO STUDIO COPORATION, :
                                   :

                   Plaintiff,   :

                                   :         16 Civ. 934 (LGS)

        -against-         :

                                   :       **OPINION AND ORDER**

RIMOWA GMBH, et al.,            :

              Defendants. :

-----------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

Rimowa GmbH, a luggage manufacturer, retained Meiré GmbH & Co. KG ("Meiré") to design an advertising campaign to promote its products. After the campaign's launch, Plaintiff Laspata DeCaro Studio Corporation ("Laspata") brought the instant action against Rimowa GmbH, its subsidiaries Rimowa Inc. and Rimowa Distribution, Inc. (collectively, "Rimowa") and Meiré, alleging that four images used in the campaign infringed Laspata's copyrights. The parties cross-move for summary judgment. The cross-motions are denied.

**I.**    **BACKGROUND**

The facts below are drawn from the parties' Rule 56.1 Statements and other submissions on this motion, and are not materially disputed.

**A.**    **Laspata and the *Speechless* Advertising Campaign**

Plaintiff Laspata is a boutique creative marketing agency based in New York City, named after its founders and co-owners, Rocco Laspata and Charles DeCaro. Laspata executes photographic advertising campaigns for its clients, which include prominent luxury brands. Laspata charges its clients various fees, including a retainer fee of $15,000 a month for a 12-month minimum, a photography fee that ranges from $25,000 to $40,000 per day, a styling fee of $3,500 per day and a production fee that ranges from $10,000 to $20,000 per photoshoot.

Laspata retains the copyrights to its photographs and licenses the images to its clients for limited use over a limited period of time. Laspata does not license its photographs to third parties or make its work available through photo licensing services because this would damage Laspata's client relationships and its ability to attract new business.

In 2012, Laspata conducted a photoshoot for its client Americana Manhasset, a shopping center in Long Island, and created a "lookbook" (a collection of photographs assembled for marketing purposes) called *Speechless* from the photographs. Mr. Laspata and Mr. DeCaro formulated the idea for the *Speechless* lookbook and its associated advertising campaign while in Los Angeles to attend the 2012 Academy Awards, in which the film *The Artist* won multiple awards including Best Picture. The film served as an inspiration for the campaign, as did other materials evoking Hollywood in the 1920s, including the films *Sunset Boulevard* and *The Thin Man*, and various photography books. Laspata charged $516,000 for services related to the photoshoot for the *Speechless* lookbook, and issued limited use licenses to Americana Manhasset and Hirshleifers, a department store located in the shopping center.

### B. Rimowa, Meiré and *The Journey* Advertising Campaign

Defendant Meiré is an advertising, branding and design agency based in Cologne, Germany. Rimowa Defendants consist of a German luggage manufacturer and its U.S. subsidiaries. In March 2014, Rimowa hired Meiré to work on an advertising campaign and lookbook for the 2015-2016 period. In May 2014, Rimowa was in the process of reconstructing the Junkers F13, a German aluminum aircraft from the 1920s that served as the inspiration for Rimowa's metal luggage product lines. Rimowa instructed Meiré that the Rimowa lookbook should feature the Junkers F13 aircraft and commercial air travel in the 1920s. The concept for

the Rimowa lookbook eventually evolved into *The Journey*, a photographic story set in the 1920s, which Meiré principal Michael Meiré described as "the golden age of Hollywood and commercial air travel."

In the course of developing *The Journey*, Meiré conducted research, including internet searches on photography websites, to familiarize itself with the 1920s aesthetic, and captured screenshots of hundreds of photographs as possible inspiration and points of reference for the Rimowa campaign. Meiré's research materials included several Laspata photographs that Meiré's employees found online.

Meiré used Adobe Photoshop to create a series of collages of reference photographs in order to create "mood images" for the photographs that were to be taken for *The Journey* lookbook. Four of the mood images included elements of Laspata photographs combined with photographs of Rimowa luggage. Laspata characterizes these mock-ups as "[a]ltered versions of the [Laspata] photographs." These images were circulated to various people working on *The Journey* photoshoot, including the photographer, Horst Diekgerdes. Diekgerdes referred to these images constantly during the photoshoot, trying to replicate them, including the four with elements of Laspata photographs. Three of the four resulting photographs were included in *The Journey* lookbook, and the fourth photograph was used by Rimowa in other marketing materials.

Rimowa also hired a camera crew to shoot footage of *The Journey* photoshoot set, which was used to create a behind-the-scenes video for Rimowa. Mood images with elements of Laspata photographs appear in the video, including two approximately three-second shots zooming in on one of the images, which features a couple and a dog sitting on director's chairs.

In 2015, Rimowa used exclusively images from *The Journey* photoshoot, including at least two that are based in part on Laspata photographs, in all its advertising worldwide. The images appeared internationally in stores, billboards, advertisements in print and online publications and Rimowa's website.

### C.    This Litigation and the Instant Motions

Laspata asserts that the four photographs taken by Diekgerdes with Laspata elements, as well as the mood images on which they were based and the video footage showing these mood images, infringe its copyrights. Count I of the Complaint pertains to the final photographs taken by Diekgerdes and included in Rimowa's promotional materials; Count II pertains to the mood images; and Count III pertains to the video footage.

Laspata moves for summary judgment on the issue of liability for infringement as to Count I.[1] Defendant Meiré cross-moves for summary judgment on the issue that the allegedly infringing photographs are not "substantially similar" to the Laspata originals under copyright law. Meiré also moves for summary judgment on Count III, asserting that it was not involved in making the video. Defendant Rimowa moves for summary judgment, asserting that Laspata

---

[1] It is unclear whether Laspata is moving for summary judgment as to Counts II and III. Laspata's opening brief in support of its motion seeks summary judgment "on the issue of Defendants' liability for copyright infringement" but does not raise arguments as to the mood images or the video. Laspata's memorandum of law limits its discussion of infringement to the "Infringing Photographs," a defined term that refers to the four photographs taken by Diekgerdes at *The Journey* photoshoot. Nonetheless, Meiré's opposition includes arguments that it is not liable under Counts II and III, and Laspata addresses these arguments in its reply. Because Laspata fails to advance affirmative argument for summary judgment as to Counts II and III, the Court does not address these issues.

cannot prove damages, and that Rimowa's use of any mood images in the video is *de minimis* and therefore not an infringement under copyright law.

## II. STANDARD

### A. Summary Judgment

When parties cross-move for summary judgment, the Court analyzes the motions separately, "in each case construing the evidence in the light most favorable to the non-moving party." *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018). Summary judgment is appropriate where the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When the movant has properly supported its motion with evidentiary materials, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks omitted and alteration in original).

### B. Copyright Infringement

"In order to make out a claim of copyright infringement . . . a plaintiff must establish three things: 1) that his work is protected by a valid copyright, 2) that the defendant copied his work, and 3) that the copying was wrongful." *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 100 (2d Cir. 2014). Copying is wrongful where two works are "substantially similar,"

meaning that "similarity . . . exists between the protected elements of a work and another work." *Id.* at 101. In copyright infringement actions, "the works themselves supersede and control contrary descriptions of them." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 52 (2d Cir. 1986)).

The Copyright Act makes a copyright infringer liable for "the copyright owner's actual damages and any additional profits of the infringer." 17 U.S.C. § 504(a)(1). "The copyright owner is entitled to recover the actual damages suffered . . . as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." *Id.* § 504(b).

## III. DISCUSSION

For the reasons stated below, the parties' motions for summary judgment are denied.

### A. Substantial Similarity

Meiré does not dispute that it had access to Laspata's photographs, which served as "research materials" for the Rimowa photoshoot. Rather, Meiré moves for summary judgment on the basis that there is no substantial similarity between its allegedly infringing photographs and the Laspata originals. Laspata, on the other hand, asserts in support of its motion for summary judgment that Meiré's photographs are "so substantially similar to the copyrighted work[s] that reasonable jurors could not differ on this issue." *Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir. 1992). Summary judgment is denied to both parties on the issue of substantial similarity because the Court finds that reasonable jurors could differ as to whether each of the allegedly infringing Meiré photographs is substantially similar to the corresponding Laspata

original.

The Copyright Act gives owners of a copyright "exclusive rights," 17 U.S.C. § 106, to protect "original works of authorship." 17 U.S.C. § 102(a). Not all elements of a work are entitled to copyright protection. For example, scènes-à-faire or "elements of a work that are indispensable, or at least standard, in the treatment of a given topic—like cowboys, bank robbers, and shootouts in stories of the American West—get no protection." *Zalewski*, 754 F.3d at 102.

"The standard test for substantial similarity between two items is whether an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 111 (2d Cir. 2001) (alteration in original) (internal quotation marks omitted). A "more discerning" test applies when a plaintiff's work contains both protectable and un-protectable elements. *Gaito*, 602 F.3d at 66; *accord DiTocco v. Riordan*, 496 Fed. Appx. 126, 128 (2d Cir. 2012) (summary order). Courts are not to consider only the protectable elements of the two works in isolation. *Boisson v. Banian*, 273 F.3d 262, 272 (2d Cir. 2001). "Such a scattershot approach cannot support a finding of substantial similarity because it fails to address the underlying issue: whether a lay observer would consider the works as a whole substantially similar to one another." *Williams v. Crichton*, 84 F.3d 581, 590 (2d Cir. 1996); *accord Hallford v. Fox Entm't Grp.*, No. 12 Civ. 1806, 2013 WL 541370, at *5 (S.D.N.Y. Feb. 13, 2013), *aff'd*, 556 Fed. Appx. 48 (2d Cir. 2014) (summary order).

In applying either test, the task is to compare holistically the works' "total concept and overall feel . . . as instructed by our good eyes and common sense." *Gaito*, 602 F.3d at 66 (internal citations omitted); *accord Fulks v. Knowles–Carter*, 207 F. Supp. 3d 274, 279

(S.D.N.Y. 2016); *Dean v. Cameron*, 53 F. Supp. 3d 641, 646 (S.D.N.Y. 2014).

As explained in detail below, as to the photographs at issue, certain aspects of the Laspata photographs are unprotectable scenes-à-faire that constitute stock elements of the 1920s, classic Hollywood aesthetic. However, many similarities between the Laspata and Meiré photographs do not involve such unprotectable elements, such that a reasonable jury could find that the alleged copies are substantially similar to the Laspata originals. At the same time, these similarities are not so encompassing as to persuade the Court to rule that the works are substantially similar as a matter of law.

**1. Couple and Dog in Director's Chairs**

This first pair of images portrays a young, attractive man and woman, and a dog, all sitting on director's chairs, facing the camera.



| Laspata Photograph | Meiré Mood Image | *Journey* Photograph |
|---|---|---|

Certain commonalities between the Laspata and Meiré images are unprotectable scènes-à-faire. The leading man and ingénue are a classic Hollywood trope, as is the Jack Russell

8

terrier, who appeared in *The Artist* and evokes Asta, the canine star of *The Thin Man* movies and other movies of the era. Scenes of movie personalities in director's chairs are likewise pervasive stock images of the milieu. But a reasonable jury could find that other similarities are protectable, such that the "total concept and overall feel" of the two images is the same. *Gaito*, 602 F.3d at 66. For instance, the composition of both images is the same -- a man on the left and a woman on the right, each seated and looking over the back of a tall director's chair, with a Jack Russell in the foreground on a low director's chair, all surrounded by props and against a fake backdrop. In both images, the two human models are resting an elbow on the seat back. The other items on the set -- crates, film reels, and, in the Meiré image, the Rimowa luggage -- are arranged similarly to frame the director's chairs. Both images employ a fake backdrop, evoking a vintage look, though one is of a city skyline at night and the other is of the Hollywood Hills in the daytime.

The two images also differ in ways that could lead a reasonable jury to conclude that they are not substantially similar. For instance, the Meiré image is set in the daytime and is visually lighter than the Laspata image, which is set at night with lit buildings in the background, resulting in a lighter mood and greater visual contrast between the people and the background in the Meiré image. The Laspata female is dressed in period dress, evoking the 1920s. The Meiré female's attire is more timeless. While all the models are turned and looking over the back of a chair, the Laspata and Meiré models are not posing in exactly the same way. The models in the Laspata image mirror each other, with their bodies turned toward each other but away from the camera, each looking over one shoulder, each touching his or her own temple with a closed hand, with their elbows almost touching each other. The models in the Meiré image are both turned

9

toward each other, three-quarters toward the camera, but the man rests one arm on the back of the chair and both his hands are visible and open.  The women in the Meiré image leans on her elbow reaching up to rest her chin on a closed hand.  The models' expressions also differ in the Lespata and Meiré images.  The models in the Laspata image are not smiling, have closed lips and a penetrating gaze; the man's brow is furrowed.  In the Meiré image, the woman smiles broadly, with teeth showing, while the man has a neutral expression.  The dog in the Laspata image is facing the camera, while the dog in the Meiré image turns his head to the side.  The chairs in the Laspata image bear the characters' names, while the chairs in the Meiré image do not.

### 2. Dog and Flapper

The second pair of images portrays a woman in a flapper dress gesturing to a dog on a director's chair as if offering the dog a treat.

| Laspata Photograph |
|---|
|  |
| **Meiré Mood Image** |
|  |

| ***Journey* Photograph** |
|---|



Scènes-à-faire in this second pair of images include the woman in a flapper dress, the Jack Russell terrier on a director's chair, and the background, which in both images evokes a classic studio lot.  Similarities that may be protectable include the general positioning of objects in the images, with the dog on the director's chair to the left, facing the woman on the right with its forelimbs resting on the seat arm.  The woman in both images extends an imaginary treat to the dog with her right hand, standing with her left arm back and her left leg bent (although the women are not identically posed).  Both images frame the dog with a more distant background and have ladders against the wall in the top right quadrant of the image.

But the two images differ in ways such that a reasonable jury could find that they are not substantially similar.  For instance, the lighting and tones in the images are almost reversed.  The models in the Laspata image are outside a warehouse in the daytime.  On the top left quadrant of the image is the entrance to a dark warehouse.  The woman is dressed in black or dark colors.

The model in the Meiré image is inside a dark warehouse or hangar, backlit by the daylight coming through the entrance to the building on the top left and a studio light on the right which casts long shadows in the image.  The woman is dressed in white or light colors.  The overall effect is that the Meiré image is more dramatic.

### 3.  Woman Dancing Charleston

In this third pair of images, a woman in a flapper dress dances the Charleston on a stage, illuminated by multiple stage lights, one heel clicked up behind her.

| Laspata Photograph | Meiré Mood Image |
|---|---|
|  | |
| *Journey* Photograph | |



While the image of a flapper dancing on a stage is a scène-à-faire, reasonable jurors may differ on their view of other aspects of the two images, and thus whether or not they are substantially similar.  For example, the women in both images wear light-colored, fringed, sleeveless dresses with short skirts; dark strappy stilettos; and head accessories--all typical of the era but not required to evoke it.  Both women are illuminated from behind by a number of stage lights that appear as bright spots in the upper two-thirds of the frame, with a shiny reflective floor in the bottom third, and the light diffusing through smoke in the background.  But in the Laspata image, there are more stage lights, which appear rigged to the ceiling, than in the Meiré image, in which fewer lights are mounted on stands.  The lights in both images reflect onto the stage, but the stage in the Laspata image is more heavily lacquered, creating the effect of light on placid water.

### 4. Couple Inside Hangar

This fourth pair of images depicts a woman and a man in a hangar with a vintage airplane in the sky and a vintage motorcycle in the hangar behind the couple.

| Laspata Photograph | Meiré Mood Image | *Journey* Photograph |
|:---:|:---:|:---:|
|  | | |

Certain common aspects of these images can be considered scènes-à-faire: the outfits and hairstyles, and the vintage airplane and motorcycle. But the images contain other notable similarities and differences that may lead reasonable juries to disagree as to substantial similarity. The arrangement of the objects in each image is unusually similar: The airplane is in flight to the left, visible through the opening of the hangar, which occupies most of the left half of the image. The couple and the motorcycle are positioned similarly, with the motorcycle behind the couple to the left, and the woman to the left of the man. Both images have what appears to be a stage light behind and to the right of the couple, beaming light toward the center of the shot. But the two couples have different demeanors, materially differentiating the mood in each shot. In the Laspata image, the couple looks away from the camera and appears to be

running deeper into the hangar, toward the right side of the shot, apparently away from the airplane.  In the Meiré image, the couple is walking toward the camera at a leisurely pace, carrying luggage, as if they had just arrived from a flight.

**B.     Damages**

Rimowa moves for summary judgment on the ground that Laspata cannot demonstrate damages from the alleged infringement.  Rimowa argues that Laspata has not proffered evidence to support a claim for actual damages based on a reasonable licensing fee for the images in question, or for Rimowa's profits attributable to the infringement.  Both arguments are unpersuasive.

**1.   Actual Damages**

"Section 504(b) permits a copyright owner to recover actual damages, in appropriate circumstances, for the fair market value of a license covering the defendant's infringing use." *Davis v. The Gap, Inc.*, 246 F.3d 152, 172 (2d Cir. 2001); *accord Semerdian v. McDougal Littell*, 641 F. Supp. 2d 233, 239 (S.D.N.Y. 2009) ("The standard for determining the fair market value of the infringing use is an objective one – 'the reasonable license fee on which a willing buyer and a willing seller would have agreed for the use taken by the infringer.'") (quoting *Davis*, 246 F.3d at 167).  Although "the amount of damages may not be based on 'undue speculation,'" the fact that "finding the fair market value of a reasonable license fee may involve some uncertainty . . . is not sufficient reason to refuse to consider this as an eligible measure of actual damages." *Davis*, 246 F.3d at 166.

Laspata has proffered sufficient evidence that a reasonable jury could use to determine a reasonable license fee.  As a matter of business policy, Laspata does not license its photographs

to third parties or make its work available through photo licensing services because such a practice would damage its client relationships. Thus, Laspata argues that the reasonable license fee for the allegedly infringing photographs would amount to the fees Laspata "would charge a hypothetical client that wanted to hire [Laspata] for an ad campaign similar to" the Rimowa campaign, which includes a retainer fee, photography fee, styling fee and production fee. Laspata provides estimates of these fees in a sworn declaration with invoices attached, and concludes that the fee for a three-day photoshoot like the one Meiré conducted for Rimowa would cost at least $330,500.

Rimowa argues that because Laspata does not license its work to third parties, it should be precluded from seeking a reasonable license fee. The argument is unavailing because Laspata's restrictive licensing policy does not imply that its work has no market value. As the Second Circuit explained in *Davis*, "[i]n order to make out [a] claim that [a copyright owner] has suffered actual damage because of the infringer's failure to pay [a reasonable licensing] fee, the owner must show that the thing taken had a fair market value." *Davis*, 246 F.3d at 166. "The question is not what the owner would have charged, but rather what is the fair market value." *Id.* The fact that Laspata runs a business charging its clients a certain level of fees to produce images like the ones at issue is evidence that these images have value in the market.

Rimowa further objects that Laspata's figure is inflated because Rimowa used only four photographs out of a series of fifty that Laspata created for Americana Manhasset's *Speechless* lookbook, and Laspata earned only $120,000 for the whole series. Rimowa contends that it would at most be liable for an artists' reference fee of between $1,000 and $4,000 per image. This argument does not challenge the sufficiency of Laspata's evidence of its actual damages.

17

Rather, it is a factual dispute to be resolved by the jury in determining the amount of Laspata's actual damages.

### 2. Infringer's Profits

"In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work."  17 U.S.C. § 504(b).  In *Davis*, the Second Circuit explained that the "gross revenue" under the Copyright Act means "gross revenue reasonably related to the infringement, not unrelated revenues."  *Davis*, 246 F.3d at 160; *accord Graham v. Prince*, 265 F. Supp. 3d 366, 388 (S.D.N.Y. 2017).  The court in *Davis* concluded that revenues from the sale of products promoted by an infringing advertisement were reasonably related to the infringement.  *Davis*, 246 F.3d at 160.  The court held that a designer who claimed that his eye jewelry had been improperly used in a Gap ad "failed to discharge his burden" by presenting gross revenues for The Gap, Inc., which included sales from other labels of the company's corporate family that were "in no way promoted by the advertisement."  *Id.* at 161.  The court explained that, had the copyright holder submitted "evidence at least limited to the gross revenues of the Gap label stores, and perhaps also limited to eyewear or accessories . . . the burden would then have shifted to the defendant" to prove deductible expenses and profits and revenues not attributable to the copyrighted work.  *Id.* at 160.

Laspata has proffered evidence that, interpreted in the most favorable light to non-movant Laspata, is sufficient to lead a reasonable jury to conclude that Rimowa's 2015 revenues are reasonably related to the allegedly infringing photographs.  Notably, in August 2015, Rimowa

issued a press release touting a 33.3% increase in sales from the previous year. The press release credited *The Journey* lookbook in part for the company's strong performance: "With a new lookbook and accompanying campaign together with store openings in prime locations . . . RIMOWA was able to consolidate its market share at the start of 2015." Rimowa's corporate designee testified that the lookbook and ad campaign were "one part of the whole game" of Rimowa's 2015 results. The evidence suggests that the images played a prominent role in Rimowa's overall 2015 advertising. That year, images from *The Journey* photoshoot, including at least two of the allegedly infringing photographs, were the only promotional images Rimowa used in all advertising worldwide. One of the photographs at issue serves as the cover image for the lookbook. The images appeared internationally in stores, billboards, advertisements in print and online publications and Rimowa's website. *See, e.g.*, *Andreas v. Volkswagen*, 336 F.3d 789, 796-97 (8th Cir. 2003) (reversing the district court's decision vacating the jury award and reinstating an award of infringer's profits where an infringing voiceover was the "centerpiece" of defendant's car commercial); *Silberman v. Innovation Luggage, Inc.*, No. 01 Civ. 7109, 2003 WL 1787123, at *10 (S.D.N.Y. Apr. 3, 2003) (Lynch, J.) ("In a case such as this, where defendants used the infringing [images of the New York skyline] as interior décor of their luggage stores, and did not sell the infringing items, it may well be that profits from the infringement are not great. However, plaintiffs are entitled to recover infringing profits to the extent that any such profits can be demonstrated, and that calculation is also reserved for a trier of fact and is not appropriate for summary judgment."); *Hendricks v. Physicians Skin & Weight Ctrs., Inc.*, No. 12 SACV 2169, 2014 WL 12561621, at *3 (C.D. Cal. Feb. 24, 2014) (denying

summary judgment where infringing "before and after" photographs were "a central part of a substantial advertising campaign" for a cosmetic procedure).

Laspata's evidence is also sufficient to convince a jury of a reasonable relationship between the alleged infringement and Rimowa's entire 2015 revenues. First, unlike The Gap in *Davis*, "the substantial portion" of Rimowa's revenues derive from the sale of luggage. Second, Rimowa's corporate designee testified that "the lookbook [with the allegedly infringing photographs] is meant to cover all products that are sold by Rimowa," not a particular product, line or collection, and not just the specific pieces of luggage featured in the photographs. As she testified, the purpose of the lookbook was to "build awareness for the entire brand of Rimowa," not just for "a particular product."

Rimowa argues that Laspata fails "to propose an apportionment of Rimowa's profits between profits attributable" to the allegedly infringing images and profits attributable to other causes. On the contrary, this burden falls on Rimowa. Under the Copyright Act, "the *infringer* is required to prove [its] deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b) (emphasis added).

## C. Infringement Claim Concerning the Video

Count III of the complaint asserts copyright infringement based on behind-the-scenes video footage of the Meiré photoshoot showing Laspata images that had been digitally altered to include Rimowa luggage. Rimowa moves for summary judgment on this count, arguing that the use of the photographs in the video constitutes *de minimis* copying. Rimowa's argument fails.

The Second Circuit laid out the standard for determining whether copying is *de minimis* in *Sandoval v. New Line Cinema Corp.*, 147 F.3d 215, 217 (2d Cir. 1998):

> To establish that the infringement of a copyright is *de minimis,* and therefore not actionable, the alleged infringer must demonstrate that the copying of the protected material is so trivial as to fall below the quantitative threshold of substantial similarity, which is always a required element of actionable copying. In determining whether or not the allegedly infringing work falls below the quantitative threshold of substantial similarity to the copyrighted work, courts often look to the amount of the copyrighted work that was copied, as well as, (in cases involving visual works), the observability of the copyrighted work in the allegedly infringing work. Observability is determined by the length of time the copyrighted work appears in the allegedly infringing work, and its prominence in that work as revealed by the lighting and positioning of the copyrighted work. . . . [A]n inquiry into the substantial similarity between a copyrighted work and the allegedly infringing work must be made on a case-by-case basis, as there are no bright-line rules for what constitutes substantial similarity.

*Id.* at 217 (citations and internal quotation marks omitted); *accord Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 632 (S.D.N.Y. 2008). In *Sandoval*, the Second Circuit upheld the district court's dismissal on summary judgment of an infringement claim where the copyrighted photograph was visible but blurred for a few seconds in the background of a film scene, and was nearly unrecognizable. *Sandoval*, 147 F.3d at 218.

The use of at least one altered Laspata image in the video is not *de minimis*. In the video, with a total runtime of 3 minutes and 12 seconds, the camera zooms in and focuses on the image depicting a couple and dog sitting on director's chairs twice, for roughly three seconds each. The image is clearly observable and in focus both times.

| Screenshot of Video at 00:26 |
| :---: |



| Screenshot of Video at 00:39 |
| :---: |



Later, the video shows the models and crew recreating the scene on set for about five seconds, reinforcing the prominence of the image in the video.

| Screenshot of Video at 01:11 |
| :---: |



Based on the Court's observation, the two shots focusing on the image with the couple and dog clearly identify the image and contribute substantially to the video. *See, e.g.*, *Ringgold v. Black Entm't Television, Inc.*, 126 F.3d 70, 76-77 (2d Cir. 1997) (use of copyrighted quilt design as set dressing for 26 to 27 seconds in a 30-minute sitcom episode was not *de minimis*).

Meiré also moves for judgment in its favor on Count III, asserting that it did not create or distribute the video, nor did it review or approve the video's content or dress the set with allegedly infringing photographs. This argument is rejected. The allegedly infringing material

in the video consists of mood images created by Meiré for use on set in the photoshoot. Meiré staff were present at the photoshoot when the video was being shot and cooperated with the film crew taking footage. A reasonable jury could find that Meiré was in a position to control Rimowa's use of the images and therefore could be vicariously liable for any infringement on Rimowa's part. *See Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 437-38 (1984) ("[T]he imposition of vicarious liability is manifestly just [when] the 'contributory' infringer was in a position to control the use of [the] copyrighted works by others and had authorized the use without [the] permission of the copyright owner.").

**D.     Motion to Strike the Diekgerdes Declaration**

Finally, Defendants move to strike a declaration by Horst Diekgerdes, which Laspata filed in support of its summary judgment briefing. Diekgerdes is the photographer who executed the lookbook photoshoot and took the allegedly infringing photographs. Defendants assert that the declaration should be excluded under Federal Rule of Civil Procedure 37(c)(1) because Laspata failed to disclose him in their amended Rule 26 initial disclosures. In addition, Defendants claim that the declaration contains numerous inadmissible statements based on hearsay. Defendants' motion is denied.

Federal Rule of Civil Procedure 26 requires a party to supplement or correct a disclosure made in an interrogatory, production request, or request for admission, "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not

allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). According to Advisory Committee Notes for the 1993 Amendments introducing the provision, the exceptions were added "to avoid unduly harsh penalties in a variety of situations: *e.g.*, the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties." Thus, "[t]he duty to supplement a Rule 26 disclosure is only necessary when the omitted or after-acquired information has not otherwise been made known to the other parties during the discovery process." *Marvel Worldwide, Inc. v. Kirby*, 777 F. Supp. 2d 720, 727 (S.D.N.Y. 2011), *aff'd in part, vacated in part on other grounds sub nom. Marvel Characters, Inc. v. Kirby*, 726 F.3d 119 (2d Cir. 2013); *accord Universe Antiques, Inc. v. Vareika*, No. 10 Civ. 3629, 2011 WL 5117057, at *4 (S.D.N.Y. Oct. 21, 2011).

The record shows that all parties to this action were aware of Diekgerdes's role in the events at issue throughout this litigation. Diekgerdes was repeatedly discussed in pleadings, deposition testimony and Meiré's submissions in support of its motion for summary judgment. Meiré's responses to former party Shotview's interrogatories, dated April 18, 2017, list Diekgerdes as an individual likely to possess knowledge relevant to this action. Because Laspata had no duty to supplement its initial disclosures to include Diekgerdes, Defendants' motion to strike his declaration is denied. *See, e.g.*, *Marvel Worldwide*, 777 F. Supp. 2d at 727 ("Because [plaintiff] became aware of [declarants] at . . . depositions, [defendants] did not have a duty to supplement their Rule 26 initial disclosures.").

Plaintiffs' contention that the Diekgerdes Declaration contains inadmissible hearsay is not grounds to strike the entire declaration.  In any event, the Court does not rely on any hearsay in the declaration in deciding these summary judgment motions.

## IV.    CONCLUSION

For the foregoing reasons, the parties' cross-motions for summary judgment are DENIED, Defendants' motion to strike the Diekgerdes Declaration is DENIED, and Rimowa's request for oral argument is DENIED as moot.

The Clerk of Court is directed to close the motions at Docket Nos. 167-170, 179, 183, 188, 207, 218 and 224.


Dated:  June 20, 2018
           New York, New York


LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE